## ALLIS CHALMERS MANUFACTURING CO. v. BYERS.

No. 27888. Feb. 28, 1939.

Rehearing Denied March 21, 1939.

Cowan, McCorkle & Nelson, Ross Rizley, and Paul Pugh, for plaintiff in error.

Geo. Frittz and Hughes & Dickson, for defendant in error.

DAVISON, J.  This is an action by the plaintiff against the defendant for the recovery of the balance of the principal and the interest and attorney's fees due on a promissory note together with the foreclosure of two chattel mortgages securing the same.

The note sued on is the unpaid one of two notes which the defendant executed and delivered to the plaintiff's assignor, Advance-Rumely Threshing Machine Company, at the time of his purchase from said assignor of a tractor and a combine thresher for a portion of the purchase price thereof.

In his answer, the defendant admitted the execution and delivery of the note and mortgages, but alleged that same were given in reliance upon the oral representations and warranties of the plaintiff's assignor, through its agents, that the tractor was good and serviceable and would develop and sustain its rated power of "20-30", and that it would pull and operate all such plows and machinery as tractors of the same rating would pull and operate. In the cross-petition accompanying his answer, the defendant alleged that he had been damaged in the amount of $1,000 by his reliance upon the misrepresentations of the plaintiffs and its assignor, and he tendered the tractor to the plaintiff and prayed for judgment against it in the sum of $925, which he alleged was the amount of cash he had paid on said machinery, together with his costs and attorney's fees.

There was no evidence introduced at the trial of any oral warranty or representation at the time the sale was made, and it appears that the only breach of warranty that the defendant attempted to prove was the usual implied warranty of suitability and fitness. The sum for which the plain-tiff sues is $100 less than the face value of the unpaid note and it is an undisputed fact that the defendant paid $100 and secured this credit about the time the entire principal of the note became due on August 1, 1930. He testified, however, that at the time he made this payment and for many months prior thereto, he had had trouble operating the tractor due to mechanical defects therein, and he introduced testimony to the general effect that the tractor did not perform as a "20-30" tractor should perform. He also testified that shortly after the purchase, he notified the seller of said alleged defects, and that when the note in question was due and before he made the payment thereon, he was told that if he "would pay an additional $100, they would send a man out to fix it up," but that no one was ever sent to fix it.

When Mr. Mandeville, the agent, who the defendant claimed had offered the above inducement for his $100 payment took the witness stand, he denied that the defendant had ever talked to him about having any trouble with the tractor and specifically denied that he had ever held out any such inducement for the payment.

The plaintiff introduced uncontradicted proof that in June, 1930, before the note was due the following August, the defendant had by letter requested an extension of time for its payment. Pursuant to this request the following instrument was executed:

"Satisfaction Certificate

"Dated at Guymon, Okla., Feb. 19th, 1931.

"Received of Advance-Rumely Thresher Company, Inc., a corporation of Laporte, Indiana, an extension of time for the payment of note No. 649409 until June 15th, 1931, in consideration of which I hereby acknowledge full satisfaction and settlement of all demands of any nature whatsoever against Advance-Rumely Thresher Company, Inc., or their successors, assigns or authorized agents, growing out of the purchase and sale or relating to certain machinery heretofore purchased from Advance-Rumely Thresher Co., Inc., viz.: One 20-30 HP Oil Pull tractor No. 1509, with 4½" spade cleats; one No. 3 Advance-Rumely Combine Harvester No. 3703, 10' Platform, Complete with Grain Bin, straw spreader and 2' extension, and expressly waive all counterclaims, setoffs, and defenses against the collection of any note or notes given therefor or indebtedness relating thereto and any renewal or renewals thereof, and I hereby acknowledge to owe Advance-Rumely Thresher Company, Inc., aforesaid for the purchase price of the said machinery the sum of $725.00 and accrued interest, which sum I promise to pay.

"There has been no promises or representations made except as herein contained.

"(Signed) Ed Byers.

"Witness

"L. E. Mandeville

"Austin Brown."

The evidence which sets forth the defendant's explanation of the execution of the above instrument is that portion of his examination by his own counsel wherein the following colloquy appears:

"Q. How come you to sign this other paper here? A. I didn't know it was a mortgage that I signed; we were talking about extending the time at that time. The tractor was broke down and we had to get an extension of time because it would be some time before they could get to me. My tractor was out of commission so I just signed that to get an extension of time until it could be fixed up. Q. Now, before you signed any of these papers, had you been promised by Mr. Mandeville that you would get your tractor fixed? * * * A. Yes sir."

When the evidence was all in, the plaintiff requested the trial court to instruct the jury to return a verdict in its, favor for the reason that the defendant had failed to establish any defense to its action on the note and mortgage. This requested instruction was refused, and upon the submission of the cause to the jury, a verdict was returned for the defendant in the sum of $514.58, with interest at 6 per cent. from July 31, 1930, together with the "cancellation of all notes and mortgages." The trial court entered judgment in accordance with said verdict, and the plaintiff has appealed.

In the first proposition argued in the plaintiff's brief, error is predicated on the refusal of the trial court to direct the verdict in its favor. Counsel assert in substance that upon any view of the evidence the plaintiff was entitled to recover on the note and mortgages, because by the execution of the "Satisfaction Certificate" introduced, the defendant had previously waived the only defense to said note and mortgage that he attempted to establish at the trial. They say that since the defendant admitted the execution of said release, there was no question of fact in the case to decide, but merely a question of law for the court as to the legal effect of such a waiver upon the defendant's alleged defense. We are cited to 55 C. J. 862, sec. 850, as authority for this proposition and it is urged that the case is controlled by the former decision of this court in Smith et ux. v. Minneapolis Threshing Machine Co., 89 Okla. 156, 214 P. 178. In that case an instrument very simi-

lar to the one here presented was executed and delivered by the defendant to the plaintiff therein. The defendant there contended that there had been a breach of warranty in that the tractor did not operate properly, but this court pointed out that the instrument constituted a waiver of the defendant's defense to the note and in holding that the trial court properly directed the jury to return its verdict for the plaintiff in view of the written waiver, said:

"The written instrument relied upon in the nature of a satisfaction of damages certainly amounts, in legal contemplation, to a waiver of any breach of the sale contract. * * *

"It is clear from the record that all of the alleged defects in the machinery, if defects in fact they were, were known to the defendant William X. Smith long prior to July 19, 1916, the date on which he executed the written instrument hereinabove set out, acknowledging full satisfaction of any and all claims or demands against the plaintiff arising out of the purchase by him and the sale by the plaintiff to him of certain machinery for the purchase price of which the said notes were executed.

"The defendants in no wise questioned the execution of the said release or satisfaction of damages, and did not in any way controvert the fact that the notes, the extension of the due date of which was made at the time of execution of said satisfaction of damages, were then long past due. In connection with the execution of said release or waiver of damages, no fraud was alleged, charged, or attempted to be shown, and the plaintiff extended the time of maturity of said note, as provided in the agreement."

In our opinion the direct application of the above language to the present case cannot seriously be questioned. Counsel for the defendant fail to point out specifically wherein the above case is inapplicable, but they refer to the portion of his testimony that we have hereinbefore quoted as supporting their contention that the execution of the instrument by the defendant was procured under the plaintiff's promise to repair and put his tractor in working order. Upon the assumption that the plaintiff's alleged promise to repair was the inducement for the execution of the "Satisfaction Certificate," they cite the decisions of this court in Fairbanks Morse & Co. v. Miller, 80 Okla. 265, 195 P. 1083, and Rudolph Wurlitzer Co. v. Allred, 120 Okla. 3, 249 P. 724, as controlling in the present case. The language referred to in these cases. can only be construed as authority for the proposition that the acceptance of an extension of time for payment of the indebtedness due on an

article is no waiver of a breach of the warranty accompanying said article if induced by a promise to repair. The cases cited and the case at bar are readily distinguishable. Besides having here a duly executed express waiver of the warranty and "all demands of any nature * * * growing out of the purchase and sale or relating" to the machinery involved, there is an absence of proof that the alleged promise to repair was the inducement or consideration for the execution of the waiver or "Satisfaction Certificate." It is not denied that the consideration named in said contract, i. e., the extension of time for the payment of the note, was granted the defendant by the plaintiff or that same comprised a consideration sufficient to make said instrument binding. The only question necessary to decide, then, is whether the quoted portion of the defendant's testimony is sufficient to disturb or avoid the binding effect of his execution of the release. In our opinion the only correct answer that can be given this question is negative. We fail to see in that testimony any proof sufficient to avoid the instrument. The general rule, as stated in section 9456, O. S. 1931, is as follows:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."

See, also, Guess v. Miner, 130 Okla. 93, 265 P. 633, and Kinnard-Haines v. Dillingham, 73 Okla. 129, 175 P. 208, where the rule was extended to "inducements". Of course, we are aware of the fact that there exist certain exceptions to the parol evidence rule, whereby certain recitals in a written contract can be varied or contradicted by parol evidence, and that such an exception has been held to include the recital of the consideration contained therein. In our opinion, however, it is unnecessary in this case to consider the cases pertaining to such questions, as, for example, McNinch v. Northwest Thresher Co., 23 Okla. 386, 100 P. 524, 138 Am. St. Rep. 803, and others contrary thereto, for the reason that the testimony in question does not amount to a representation that a promise to repair was the true consideration or an additional consideration for the execution of the "Satisfaction Certificate". Whatever may have been the defendant's impression or understanding as to the plaintiff's alleged promise or representation that it would repair his tractor, the defendant's recorded statement falls far short of a charge or specific claim that plaintiff made such a separate and distinct promise to induce him to sign the instrument. All presumptions are in favor of the validity and veracity of a duly executed written contract that is valid and complete on its face, and it is presumed to embody all of the terms of the contract that were agreed upon between the parties. See cases cited in 6 O. D. 568, 569, "Evidence," Key Number 397. And in the absence of circumstances that suggest fraud, duress, or undue influence, it is generally presumed that one who executes such an instrument has read it and understands its contents. See Mayfield v. Fidelity State Bank of Cleveland, 121 Okla. 179, 249 P. 136, and compare Dusbabek v. Bowers, Adm'x, 173 Okla. 53, 43 P.2d 97. In Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, it was said:

"It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written."

In view of the foregoing considerations and the further fact that the defendant has received the consideration stipulated in the release or satisfaction certificate, it would be contrary to the principles of law as well as the precepts of equity to allow him now to avoid, by the testimony in question, an undenied solemn discharge of any cause of action he may previously have had against the plaintiff for a breach of express or implied warranty. If such a procedure is to be available to the defendant, he can overthrow the written instrument and establish his plea only by evidence of a clear, cogent, and convincing character. A glance at the defendant's testimony is sufficient to demonstrate that it fails to meet the requirements of a successful avoidance of his written waiver of a defense to the plaintiff's action on the ground of breach of warranty. As he pleaded no other defense and did not deny the execution or validity of the note and mortgages, nor the amount due thereon, we can only conclude that the trial court erred in refusing to direct a verdict in favor of the plaintiff and against the defendant for judgment on said note and the foreclosure of said mortgages. Its judgment for the defendant is therefore reversed and remanded, with instructions to the trial court to sustain the plaintiff's motion for a new trial and proceed in a manner not inconsistent with the views herein expressed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN and GIBSON, JJ., concur.