**Marvin M. SCHUSTER, M.D., individually, Marvin M. Schuster, M.D. and Chana Schuster, a/k/a Susan Schuster, as trustees for Defined Benefit Plan, Marvin M. Schuster, M.D., P.A. and Chana Schuster, a/k/a Susan Schuster, as trustees for Employees Pension Trust, and Chana Schuster, a/k/a Susan Schuster, individually, Plaintiffs,**

v.

**KIDDER, PEABODY & COMPANY, INC., a Delaware corporation, and Drexel Burnham Lambert, Inc., a Delaware corporation, Defendants.**

No. 86–6149–CIV.

United States District Court, S.D. Florida.

June 27, 1988.

Jerome H. Shevin, Miami, Fla., for plaintiffs.

Earl D. Waldin, Jr., Miami, Fla., for Kidder, Peabody & Co., Inc.

Curtis Carlson, Miami, Fla., for Drexel Burnham Lambert, Inc.

### ORDER ON MOTIONS TO COMPEL ARBITRATION

PAINE, District Judge.

This cause comes before the court upon Defendants', KIDDER, PEABODY & COMPANY, INC. (KIDDER) and DREXEL BURNHAM LAMBERT, INC. (LAMBERT) Motions to Compel Arbitration and supporting memoranda (DE 12, 13 and 15), Defendants' supplemental memoranda (DE 17, 20 and 23) and Plaintiff's Response to Defendants' Motions (DE 18). Having reviewed the file and the relevant authorities, the court enters the following order.

#### Facts

In or about August, 1982, Plaintiff, MARVIN M. SCHUSTER, M.D. (SCHUSTER), opened brokerage accounts on behalf of himself and other Plaintiffs in this cause with Defendant, KIDDER. The account executive in charge of the Plaintiffs' investments was Maurice Buchsbaum. Buchsbaum became an employee of Defendant, LAMBERT, in August of 1983. Plaintiffs'

accounts were transferred to LAMBERT in order to continue Plaintiffs' relationships with Buchsbaum. Plaintiffs' Complaint is based upon the failure of investments in the stock of two particular companies, Cardiac Resuscitator Corporation and Sykes Datatronics. Each Plaintiff lost substantial sums of money as a result of the investments in the two companies. Plaintiffs alleged that Buchsbaum, while an employee of both KIDDER and LAMBERT, made material misrepresentations of fact regarding the purchase and failure to sell the stock when Plaintiff, SCHUSTER expressed concern about its decline in value. The nine count Complaint bases its requests for relief on the following grounds: Count I, common law fraud; Count II, § 10(b) of the Securities and Exchange Act of 1934; Count III, § 12(2) of the Securities Act of 1933; Count IV, the Florida blue sky laws, §§ 517.301 and 517.211 of the Florida Statutes; Count V, 18 U.S.C. § 1962(c) (the federal RICO Act); § 895.05 of the Florida Statutes (Florida RICO); Count VI, breach of fiduciary duty; Count VIII, negligence; Count IX, §§ 812.014 and 812.035(7) of the Florida Statutes (Civil Theft). Defendants move to compel arbitration of all Counts, although based on the state of the law at the time the motion was filed, LAMBERT conceded that the claim under § 12(2) of the Securities Act was not arbitrable.

As to each account opened on behalf of the Plaintiffs with both KIDDER and LAMBERT, SCHUSTER signed a standard customer agreement. Each of those agreements contained an arbitration clause. The agreement between the Plaintiffs and KIDDER provided as follows:

Any controversy arising out of or relating to accounts of or transactions with or for the undersigned or to this agreement or the breach thereof shall be settled by arbitration in accordance with the rule of either the American Arbitration Association or the New York Stock exchange as

the undersigned may elect. If the undersigned does not make such election be [sic] registered mail addressed to you at your main office in New York City within five days after demand by you that such election be made, then you may make such election. . . .

The agreement between Plaintiffs and LAMBERT is substantively the same:

Any controversy between you and the undersigned arising out of said account or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of the American Arbitration Association, the New York Stock Exchange, Inc., the American Stock Exchange, Inc. or the National Association of Securities Dealers, Inc., as the undersigned may elect. If the undersigned does not make such election, by registered or certified mail addressed to you . . . within (5)) five days after demand by you that the undersigned make such election, then you may make such election. . . .

Both agreements provide that "[j]udgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof." Plaintiffs argue in their Response to Defendants' Motions that the claims under § 10(b) of the 1934 Act and § 12(2) of the 1933 Act are not arbitrable[1] and that the pendent state law claims should not be subject to arbitration because the customer agreements at issue are contracts of adhesion and lack mutuality of obligation.

## Arbitration In General

The Federal Arbitration Act, 9 U.S.C. §§ 1–14, applies when a party seeks to enforce a written agreement to arbitrate a civil dispute in a federal district court having jurisdiction pursuant to Title 28 of the United States Code. 9 U.S.C. § 4. Section 2 of the Act provides that

1. Subsequent to the Plaintiffs filing their Response to the Motions, the Supreme Court handed down its decision in *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which held that courts may compel arbitration of claims made under § 10(b) of the 1934 Act and RICO claims based

upon alleged violations of that Act. Following that decision, this court found, as a matter of first impression that based on logic of *McMahon*, a claim under § 12(2) of the 1933 Act should also be subject to arbitration. *Benoay v. E.F. Hutton Co.*, 699 F.Supp. 1523 (S.D.Fla.1988).

[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such a contract ..., or the refusal to perform the whole or any part thereof ... shall be valid, irrevocable, and enforceable, save upon any such grounds as exist at law or in equity for the revocation of any contract.

The purpose and effect of the Act is to encourage the arbitration of civil disputes outside the judicial forum. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, when certain claims come within the purview of the Act, and where there is no issue regarding the validity of the arbitration clause or the plaintiff's failure to arbitrate, the court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140 (5th Cir.1985).

█ In the instant case, the customer agreements from which the Plaintiffs' claims arise are contracts "evidencing a transaction involving commerce" within the meaning of the Arbitration Act, therefore the Act applies to them. The Defendants' Motions to Compel Arbitration served as demands that Plaintiffs make their election as to the choice of arbitrators. Plaintiffs chose to oppose the Motions rather than submit to arbitration. As a result, there is no dispute that the Plaintiffs have failed or refused to arbitrate their claims. The court must grant the motion to compel arbitration, provided that the claims asserted by the Plaintiffs are arbitrable, and provided that the arbitration clauses are valid and enforceable.

Generally, any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Howard Elec. and Mechanical Co. v. Frank Briscoe Co.*, 754 F.2d 847 (9th Cir.1985); *Mobile Oil Corp. v. Local 8–766 Oil, Chem and Atomic Workers Internat'l Union*, 600 F.2d 322 (1st Cir.1979). Claims relating to brokerage agreements, such as those at issue here, are "the archetypal kinds of disputes referable to arbitration." *Macchiavelli v. Shearson, Hamill & Co.*, 384 F.Supp. 21, 30 (E.D.Cal.1974.

### Arbitrability

In *Shearson/American Express v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)[2], the United States Supreme Court held that claims asserted under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and the federal RICO Act, 18 U.S.C. § 1961, *et seq.* are arbitrable. Accordingly, the court finds that Counts II and V are arbitrable.

*McMahon* did not directly hold that claims under § 12(2) of the Securities Act of 1933 (as alleged in Count III of the Plaintiffs' Complaint) are also arbitrable, but it certainly appears from the opinion that had the issue been before the Court, there is every likelihood that the Arbitration Act would have been held applicable to such claims. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that clams asserted under § 12(2) were not subject to arbitration. The Court's decision was based upon two other sections of the 1933 Act, § 22(a), which provides for concurrent jurisdiction in state and federal courts over claims under the 1933 Act, and § 14 which renders void "[a]ny condition, stipulation or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the commission...." 15 U.S.C. § 77n. Thus, the *Wilko* Court determined that agreements to arbitrate could not be enforced because they required affected persons to waive compliance with the statutory provision giving state and federal courts concurrent jurisdiction over actions based upon the Securities Act of 1933.

Sections 27 and 29, 15 U.S.C. §§ 78aa and 78cc, of the Securities and Exchange

---

**2.** *McMahon* overruled *Wolfe v. E.F. Hutton*, 800 F.2d 1032 (11th Cir.1986) and *Tashea v. Bache,* *Halsey, Stuart, Shields, Inc.,* 802 F.2d 1337 (11th Cir.1986).

Act of 1934 are almost identical to those found in the 1933 Act. Applying *Wilko* to 1934 Act claims, the circuit courts across the nation uniformly held that such claims were not arbitrable. *See e.g., McMahon,* 107 S.Ct. at 2349 n. 6 (Blackmun, J. concurring in part and dissenting in part). The Supreme Court rejected the *Wilko* doctrine in *McMahon,* refusing to extend its reasoning to 1934 Act claims. *Id.* at 2351. The *McMahon* Court explained that § 29 only prohibits waiver of the *substantive* obligations imposed by the 1934 Act, and, since § 27 (the jurisdictional section) does not impose any statutory duties, a waiver of that section does not constitute a waiver of "compliance with any provision" of the 1934 Act. *Id.* at 2338. In short, the court determined that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 2339 (quoting from *Mitsubishi Motor Corp. v. Soler–Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985)).

Clearly, *McMahon* has left the status of the *Wilko* doctrine in question. As the Court noted, *Wilko,* was decided at a time when the courts distrusted the arbitration forum, and judicial direction was needed to protect the substantive rights which the Securities Act provided for investors. Thus, *"Wilko* must be understood ... as holding that the plaintiff's waiver of the right to select the judicial forum' ... was unenforceable only because arbitration was judged inadequate to enforce the statutory rights created by § 12(a)." *Id.,* 107 S.Ct. at 2338. Recognizing that the judicial distrust of arbitration and agreements to arbitrate which prevailed at the time of *Wilko* has dissolved in the recent years [3], the Court went on to say that *"Wilko* must be read as barring a waiver of the judicial forum only where arbitration is inadequate to protect the substantive rights at issue."

*Id.* at 2339. The necessary corollary to that rule, then, is that where arbitration *is* adequate to protect "the substantive rights at issue" *Wilko* does not apply and arbitration will be compelled. *Id.* at 2339.

Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. 78j makes it unlawful

for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investor.

In comparison, § 12(2) of the Securities Act of 1933 provides that any person who

offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances in which they were made, not misleading (the purchaser not knowing of said untruth or omission), and who shall not sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing the security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the

---

**3.** *See Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Mitsubishi Motors Corp. v. Soler–Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Moses Cone Memorial Hosp. v. Mercury*

*Constr. Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1981).

consideration paid for such security with interest thereon, less the amount of any damages if he no longer owns the security.

There is nothing to show that judicial resolution is more necessary when 1933 Act claims are asserted than when claims are brought under the 1934 Act. Therefore, there is no valid reason why the arbitration forum should not be available when the plaintiff is proceeding under the 1933 Act.

■ Although the *McMahon* Court stated that *"stare decisis* concerns may counsel against upsetting *Wilko*'s contrary conclusion under the Securities Act", *Id.* at 2341, the *Wilko* doctrine was certainly severely undermined by *McMahon.* Accordingly, the court finds that the Arbitration Act applies to claims brought under § 12(2) of the Securities Act of 1933, and that the claims asserted in Count III of the Complaint are arbitrable. *Benoay v. E.F. Hutton & Co.,* Case No. 82–6709–CIV–PAINE (S.D.Fla.1988).

Plaintiffs do not contest the arbitrability of their pendent state law claims. However, they do argue that the state law claims should not be subject to arbitration based on the fact that the customer agreements signed in relation to each of the Plaintiffs investment accounts were contracts of adhesion, all of which lack mutuality of obligation.[4] The court finds that Counts I, IV, VI, VII, VIII and IX of the Complaint are arbitrable. *See Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Miller v. Drexel Burnham Lambert, Inc.,* 791 F.2d 850 (11th Cir.1986).

Validity of the Arbitration Agreement

■ 9 U.S.C. § 4 controls how and when a party may ask the court to compel arbitration and the right of the opposing party to have a judicial determination of the validity of the arbitration agreement. The statute provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily

to the trial thereof...." 9 U.S.C. § 4. A claim of fraud in the inducement of the arbitration clause itself is an issue which goes to the "making" of the agreement to arbitrate within the meaning of the statute. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1183 (11th Cir.1981). "[A]lthough section 4 ... speaks only of challenges to 'the making' of the agreement to arbitrate, the term has been held to encompass any challenge to the validity of the agreement, even if there is no disagreement that it was 'made'." *Matterhorn, Inc. v. NCR Corp.,* 763 F.2d 866, 868 (7th Cir.1985). When such a claim is made, it is proper for the court to adjudicate the issue of fraudulent activity before ordering the parties to arbitrate. *Prima Paint Corp.,* 388 U.S. at 403, 87 S.Ct. 1805–06. However, "the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.; See also Benoay v. Prudential–Bache Securities, Inc.,* 805 F.2d 1437 (11th Cir. 1986). When claims of fraud, unconscionability, lack of mutuality or contract of adhesion pertain to the contract as a whole, not to the arbitration clause alone, those issues should be resolved in arbitration. *Benoay,* 805 F.2d at 1441.

In the instant case, Plaintiffs make no claim that there was any fraud in the inducement nor that the arbitration clauses are unconscionable in and of themselves. On the contrary, the Plaintiffs contend that the customer agreements themselves are contracts of adhesion and lack mutuality of obligation and that *as a result* the arbitration clauses "may themselves be unconscionable." (DE 18 at 8). All of Plaintiffs' allegations relate to the customer agreements as a whole and attempt to make a connection between general unconscionability and lack of mutuality and the arbitration provisions contained within the contracts. The court finds that Plaintiffs have not sufficiently alleged unconscionability and lack of mutuality with respect to raise

---

4. The court disagrees with this contention. This    issue is discussed more fully *infra.*

a genuine issue as to their validity. Thus, the issues of contracts of adhesion, unconscionability and lack of mutuality are properly subject to arbitral, as opposed to judicial, resolution. *Interbras Cayman, Co. v. Orient Victory Shipping Co. S.A.*, 663 F.2d 4 (Cir.1981). Therefore, the court finds that all Plaintiffs claims may be sent to arbitration. Since all claims made by the Plaintiffs shall be resolved by arbitration, there is no need to address Defendants' requests for a stay of proceedings pending the outcome of arbitration.

In view of all of the foregoing, it is hereby

ORDERED and ADJUDGED that

(1) Defendants', KIDDER, PEABODY & COMPANY, INC. and DREXEL BURNHAM LAMBERT, INC. (LAMBERT) Motions to Compel Arbitration (DE 12 and 15) are GRANTED. The claims asserted by the Plaintiffs shall be submitted to arbitration in accordance with the parties' agreements to arbitrate. Any party may apply to this court for an order confirming any damages the arbitrator(s) may award;

(2) Plaintiff's Motion for Protective Order (DE 29) is DENIED as moot;

(3) Defendant's, KIDDER, PEABODY & COMPANY, INC., Motion for Judgment on the Pleadings (DE 35) is DENIED as moot;

(4) Defendant's, KIDDER, PEABODY & COMPANY, INC., Motion for Partial Summary Judgment (DE 37) is DENIED as moot.

(5) Defendant's, KIDDER, PEABODY & COMPANY, INC., Motion to Dismiss Count IV of the Complaint or for Judgment on the Pleadings is DENIED as moot.