John BEVERE; Salvatore Bevere; Thomas McKinney; Stephen Scurko; Edward Wisniewski, Plaintiffs,

v.

OPPENHEIMER & CO., Defendant.

Civ. No. 93–1925.

United States District Court, D. New Jersey.

April 18, 1994.

1244

James O. Guy, Union, NJ, for plaintiffs.

Arthur P. Havighorst, Shanley & Fisher, Morristown, NJ, for defendant.

## OPINION

CHESLER, United States Magistrate Judge.

### I. *Introduction*

This matter comes before the Court on the motion of defendant, Oppenheimer & Co., to stay the action now pending before the district court and to compel arbitration. This motion was referred to the undersigned by the Honorable Harold A. Ackerman, U.S.D.J. Oral argument was first heard on September 13, 1993, at which time the Court, following the decision of the United States Court of Appeals for the Third Circuit in *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923 (3d Cir.1985), held that the statutory ERISA[1] claims involved in the action were

---

1. Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

not subject to arbitration and therefore denied defendant's motion.

Subsequently, the Third Circuit issued its decision in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993), which overruled *Barrowclough* in part and held that statutory ERISA claims may be subject to arbitration under section 2 of the Federal Arbitration Act ("FAA"), codified at 9 U.S.C. § 1 et seq., if there is no dispute as to the formation of the agreement to arbitrate. The district court therefore vacated this Court's decision of September 13, 1993, and remanded the action for proceedings consistent with *Pritzker*. Order of Hon. Harold A. Ackerman, Civ. No. 93–1925 (HAA) (Nov. 18, 1993) (unpublished).

The Court again heard oral argument on defendant's motion to stay the action and compel arbitration on January 24, 1994. At the conclusion of oral argument, the Court ordered the parties to make additional submissions to the Court. The parties provided their submissions in February, 1994, and no further oral argument was heard.

## II. *Background*

Plaintiffs filed this action pursuant to 29 U.S.C. §§ 1109 and 1132, claiming that defendant breached statutorily imposed fiduciary obligations it owed to plaintiffs in its role as account advisor of Micro Products Engineering Company Profit–Sharing Retirement Plan, which all parties agree is an employee benefit plan, within the meaning of 29 U.S.C. § 1002, subject to the provisions of the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, codified as amended at 29 U.S.C. § 1001 et seq. Specifically, plaintiffs, who are plan participants and beneficiaries, claim that defendant breached its statutory fiduciary duties to plaintiffs by permitting the sole shareholder of Micro Products Engineering Co. to borrow against the plan assets and to divert those funds to the corporation.

The background of this case is complicated, but only a brief recitation is necessary here. On August 1, 1965, plaintiffs began to participate in a profit-sharing plan provided by their employer, Micro Products Engineering Company. On July 8, 1986, Micro Technology Co., a corporation wholly owned by William Helbling, purchased the assets of Micro Profits Engineering Co. and, over the next two years, Helbling contributed a total of $1,033.21 to plaintiffs' profit-sharing plan.

On May 16, 1990, Helbling, acting on behalf of Micro Products, filed for bankruptcy protection pursuant to chapter 11 of the United States Bankruptcy Code.[2] This filing was later converted a liquidation proceeding pursuant to chapter 7 of the United States Bankruptcy Code.

In March, 1991, Helbling, whom defendant contends was the plan administrator of plaintiffs' profit-sharing plan, opened an investment account in the plan's name with defendant Oppenheimer Co. In July, 1991, Helbling (on behalf of the plan) and Oppenheimer & Co. executed a customer agreement containing an arbitration clause that provided in relevant part:

26. ARBITRATION AND GOVERNING LAW.

Arbitration: By maintaining my account with you, I/we agree to submit all controversies with you to arbitration in accordance with the provisions set forth below....

. . . .

All controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on, or subsequent to the date hereof, shall be determined by arbitration in accordance with the Federal Arbitration Act to the fullest extent permitted by law. The arbitration shall be determined only before, and in accordance with the rules then in effect of, either the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. or any other exchange or self-regulatory organization of which you are a member, as I may elect.

---

**2.** Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (codified as amended at 11 U.S.C. §§ 101–1330 (1988 & Supp.1992)).

Certification of John T. McGuire, Esq., Exh. A.

Plaintiffs have now brought suit against defendant for claims relating to the customer agreement with Oppenheimer. Specifically, plaintiffs claim that defendant breached its statutory fiduciary duties, established under 29 U.S.C. §§ 1109 and 1132,[3] by permitting Helbling, the sole shareholder of Micro Products Engineering Co., to borrow against the plan assets and to divert those funds to the ailing corporation.

In lieu of an answer, defendant filed the instant motion to stay the action and to compel arbitration. Defendant contends that the Third Circuit's decision in *Pritzker* expressly allows for the arbitration of statutory ERISA claims, and that the language of the arbitration clause contained in the customer agreement, set forth above, clearly requires arbitration of all disputes arising from the customer agreement between Micro Products Profit–Sharing Retirement Plan and Oppenheimer & Co. Finally, defendant contends that, although Helbling was the sole signatory on behalf of the profit-sharing plan, all plaintiffs are bound to the arbitration clause because Helbling was plan administrator of the profit-sharing plan and therefore had authority to bind plaintiffs.

Plaintiffs contend that this matter is not arbitrable because Helbling's agreement to an arbitration clause could not bind plaintiffs, who had not executed the customer agreement containing the clause. Additionally, plaintiffs contend that the customer agreement is void as a contract of adhesion, and that it can not require arbitration concerning facts that transpired prior to the execution of the customer agreement.[4]

### III. *Discussion*

Defendant's motion calls upon the Court to resolve four issues. The Court must first determine whether statutory ERISA claims may be subject to arbitration under section 2 of the Federal Arbitration Act, codified at 9 U.S.C. § 2. If statutory ERISA claims may be subject to arbitration, then the Court must determine whether all plaintiffs may be bound to arbitration despite that they were not signatories to the customer agreement with Oppenheimer. The Court must also determine whether the profit-sharing plan was bound to the arbitration clause in light of the fact that, after the account was opened, Helbling abused his fiduciary obligations by diverting plan assets to the corporation that

3. Section 1109 provides in relevant part:

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

29 U.S.C.A. § 1109 (West 1985). Section 1132 provides in relevant part:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan;
....

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or

(ii) to enforce any provisions of this subchapter or the terms of the plan; ....
*Id.* § 1132.

4. Plaintiffs contend that, because the customer agreement containing the arbitration clause was signed several months after the account was opened, that the agreement to arbitrate can not be enforced retroactively. This argument, however, must be rejected in light of the fact that the arbitration clause itself, to which both the plan and Oppenheimer & Co. agreed by executing the customer agreement, expressly provided that any controversies arising prior to the execution of the customer agreement would be arbitrated. *See Gilmore v. Shearson/American Express Inc.*, 668 F.Supp. 314, 320 n. 10 (S.D.N.Y.1987) ("That some of the transactions may have preceded the date of the agreement is not relevant. The arbitration clause, by its terms, applied to any controversy relating to plaintiff's account."); *Clark v. Kidder, Peabody & Co.*, 636 F.Supp. 195, 197 (S.D.N.Y.1986) ("By its terms, the clause covers all disputes relating to Clark's account at Kidder.... Thus, in agreeing to modify the terms of the account Clark consented to submit claims relating to that account to arbitration. It is irrelevant that the transactions at issue occurred before this modification was effected.").

he wholly owned. Finally, if the Court finds in the affirmative as to the foregoing issues, it must then determine whether the customer agreement was a contract of adhesion.

### A. Arbitrability of Statutory ERISA Claims

■ When the Court initially considered defendant's motion on September 13, 1993, its decision was guided by the decision rendered by the United States Court of Appeals for the Third Circuit in *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923 (3d Cir.1985). In that case, the Third Circuit held that "claims of statutory violations can be brought in a federal court notwithstanding an agreement to arbitrate." *Id.* at 939. In so holding, the Third Circuit distinguished statutory ERISA claims from contractual claims, and based its holding on the conclusion that "ERISA neither completely supplants nor is completely subordinate to arbitration." *Id.* Accordingly, this Court denied defendant's motion to compel arbitration of the statutory ERISA claims.

On October 15, 1993, about a month after this Court denied defendant's motion to compel arbitration, the Third Circuit issued its decision in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993). In that case, the Third Circuit acknowledged that recent Supreme Court decisions suggested a strong trend in favor finding arbitrable statutory claims in a variety of areas, and therefore held that agreements to arbitrate statutory ERISA claims may be enforceable. *Id.* at 1116 (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)).

Therefore, it is clear that enforcement of the arbitration clause in the customer agreement executed between Helbling and Oppenheimer is not barred solely because the claims at issue are statutory in nature.[5] Accordingly, the Court may deny defendant's motion only if it first determines that there is a legitimate dispute concerning the formulation of the agreement to arbitrate. *Id.*

### B. Whether Plaintiffs as Non–Signatories May Be Bound

The Court must next determine whether Helbling's execution of the customer agreement binds plaintiffs to the arbitration clause. Defendant claims that Helbling executed the customer agreement as plan administrator of the profit-sharing plan in which all plaintiffs participated. As plan administrator, defendant claims, Helbling had the authority to bind the plaintiffs to an agreement executed between Oppenheimer & Co. and the profit-sharing plan.

Plaintiffs assert that Helbling did not function as plan administrator, and that Helbling therefore had no authority to bind them to the customer agreement. Moreover, they appear to contend that, even if Helbling did have authority as plan administrator to execute the agreement, his fraudulent conduct in using plan assets for the benefit of his corporation vitiates the validity of any arbitration clause that he executed. Plaintiffs conclude that, because they were not signatories to the customer agreement and because Helbling had no authority to bind them, defendant's motion to stay the action and compel arbitration should be denied, and plaintiffs should be allowed to continue with this action.

■ It is clear that if Helbling did not bind the plan to the agreement, then defendant's motion must be denied, because "[a]s a matter of contract, no party can be forced to arbitrate unless that party has entered an agreement to do so." *PaineWebber, Inc. v.*

---

5. The court in *Pritzker* noted that an issue may exist where an arbitration agreement provides that it covers only disputes authorized by law to be subject to arbitration. *Pritzker*, 7 F.3d at 1115. Where, at the time an arbitration agreement containing such claims was executed, existing law barred arbitration of ERISA claims, it may be argued that the arbitration clause incorporates that existing law and "freezes it in time" regardless of subsequent changes in the law. While plaintiffs have suggested, both in oral argument and in subsequent submissions, that they are asserting such an argument, a review of the arbitration agreement discloses no provision that even arguably supports their "frozen in time" argument. Therefore, this contention must be summarily rejected.

*Hartmann,* 921 F.2d 507, 511 (3d Cir.1990). Accordingly, a court can not compel arbitration unless it first determines "that a valid agreement to arbitrate exists between the parties and that the specific dispute [lies] within the substantive scope of the agreement." *Id.* *See also Pritzker,* 7 F.3d at 1114 (quoting *PaineWebber*); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (holding that court construing language of FAA is obliged to consider only issues relating to making and performance of agreement to arbitrate). In determining whether to apply the FAA to compel arbitration pursuant to an agreement, a court must apply federal law. *Pritzker,* 7 F.3d at 1114; *Barrowclough,* 752 F.2d at 937.

Although the FAA permits the enforcement of a contractual undertaking to arbitrate, *see* 9 U.S.C. § 1 *et seq.,* it also instructs that the court should not do so if there exists an issue regarding the making of the agreement to arbitrate. 9 U.S.C. § 4. If there is an issue regarding the making of the agreement to arbitrate, then "the court shall proceed summarily to the trial" of that issue.[6] *Id.* *See also Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 55 (3d Cir.1980).

In this case, however, there is no legitimate dispute that Helbling had authority to bind the plan to the arbitration clause. First, Helbling was the sole shareholder of Micro Products Engineering Co., and the person solely responsible for establishing the plan's account at Oppenheimer & Co. Additionally, Helbling held himself out to Oppenheimer as administrator of the profit-sharing plan when he executed an authorization for the plan to borrow from Oppenheimer on margin of the plan's funds, and to trade in its customer account. Helbling executed this document, which was notarized, on July 25, 1991. Certification of Arthur P. Havighorst II, Exh. A (January 28, 1994).[7] Similarly, Helbling executed the account agreement itself purporting to be the plan administrator. *Id.* Exh. B. Given Helbling's role in opening the account, his status as sole owner of the plan sponsor, and his representations to Oppenheimer & Co. in opening the account, Helbling had, at a minimum, apparent authority to bind the plan to the account agreement containing the arbitration clause.[8] *See* AGENCY, 3 AM.JUR.2d § 78, at 582–83 ("So far as concerns a third person dealing with an agent, the agent's "scope of authority" includes not only the actual authorization con-

---

**6.** This circuit has held that courts, in ruling on a motion to compel arbitration, should employ the same standard as for a motion for summary judgment. *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n. 9 (3d Cir.1980); *Harold Friedman, Inc. v. Thorofare Markets, Inc.,* 587 F.2d 127, 131 (3d Cir.1978). Accordingly, "only where there exists no genuine issue of fact concerning the formation of the agreement should the courts decide, as a matter of law, whether the parties entered such an agreement." *Eckenthal v. Smith, Barney, Harris, Upham & Co., Inc.,* Civ. No. 91–4208 (MTB) (unpublished Opinion and Order of Hon. Stanley R. Chesler, dated March 30, 1992), at 5 n. 4, *aff'd,* unpublished Opinion of Hon. Maryanne T. Barry, dated June 1, 1992 (citing *Par–Knit Mills,* 636 F.2d at 54).

**7.** This document, which is addressed to defendant, provides in relevant part:

I, The Plan Administrator for the Micro Products Engineering Company Reinstated Profit Sharing Plan, a duly organized company profit sharing plan, do hereby authorize the borrowing of funds by the plan from time to time, as the Administrator shall see fit; and/or the hypothication [sic] for purposes of borrowing of

the plan assets, as the Administrator shall deem in the best interests of the plan, and; specifically: hereby authorizes the borrowing on margin of such funds from Oppenheimer and Company, as the Administrator deems appropriate and justified.
I hereby certify that I am the duly authorized Plan Administrator and I am fully empowered to engage in the transaction described herein.
MICRO PRODUCTS ENGINEERING COMPANY REINSTATED PROFIT SHARING PLAN
[signature]
WILLIAM F. HELBLING, PLAN ADMINISTRATOR
JULY 25, 1991
[notarization and seal]
Certification of Arthur P. Havighorst II, Exh. A (January 28, 1994).

**8.** Section IX of the plan documents indicates that the administrator of the plan is the "employer," Micro Products Engineering Co., with a "committee" designated by the employees' board of directors given authority to act as the employer's agent in administering the plan. (Plaintiff's Exh. 3, ¶¶ 9.01, 9.02) The record does not indicate whether such a committee was ever appointed or ever functioned.

ferred upon the agent by the principal, but also that which has apparently been delegated to him.... In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority....."). Moreover, plaintiffs fail to point to any evidence suggesting that anyone else actually performed the functions of plan administrator or was ever authorized to perform them. In the absence of such evidence, and given Helbling's role as the person in control of the plan sponsor, the evidence supporting his status as administrator is uncontroverted.

■ This conclusion does not change in light of the possibility that, after the account was opened, Helbling may have violated his fiduciary obligations as plan administrator by seeking to borrow on margin from Oppenheimer & Co. for the benefit of the corporation. In short, that Helbling may have abused his discretion as plan administrator to divert borrowed funds from the profit-sharing plan to Micro Products does not preclude a finding that he nevertheless had authority to bind the plan, and hence the plan participants, to the customer agreement with Oppenheimer & Co.

In *Eckenthal v. Smith, Barney, Harris, Upham & Co., Inc.*, Civ. No. 91–4208 (MTB) (unpublished Opinion and Order of Hon. Stanley R. Chesler, dated March 30, 1992), *aff'd,* unpublished Opinion of Hon. Maryanne T. Barry, dated June 1, 1992, this Court held that an issue as to a co-trustee's conflict of interest did not call into question his authority to bind the trust to an arbitration clause in a securities account agreement, and therefore did not place in issue the formation of the agreement.

As with the co-trustee in *Eckenthal,* here it is clear that Helbling possessed the authority to bind the plan to the customer agreement at the time it was executed. This conclusion does not change because a dispute later arose concerning the propriety of Helbling's conduct in borrowing on margin from Oppenheimer, although it obviously gives rise to issues concerning whether he, as plan administrator, breached his fiduciary duties to the profit-sharing plan participants. *See Ecken-*

*thal,* Civ. No. 91–4208 (MTB) (unpublished Opinion and Order of Hon. Stanley R. Chesler, dated March 30, 1992), at 8.

■ In short, under *Prima Paint Corp.,* that a party with authority to execute an arbitration clause did so while engaged in a fraudulent activity is insufficient to invalidate the clause absent evidence that the parties intended to withhold that issue from arbitration. *Prima Paint,* 388 U.S. at 406, 87 S.Ct. at 1807. Plaintiffs have submitted no proof that they intended to exclude from arbitration issues of fraud or, for that matter, any other issues.

■ Moreover, the law in this circuit makes clear that individuals who are not direct signatories to an arbitration agreement may nevertheless be bound by it when their claims arise from the very contract that contains the arbitration clause. *Barrowclough,* 752 F.2d at 938–39. In this case, if plaintiffs have any claims at all, those claims clearly arise from the relationship between the plan and Oppenheimer & Co. This relationship is governed by the account agreement executed by defendant and Helbling. Thus, plaintiffs simply can not on the one hand sue defendant on a claim arising from this relationship, while simultaneously seeking to repudiate the obligations set forth in the document that was created to govern that very relationship. Here, as in *Barrowclough,* the fact that plaintiffs have chosen to pursue "inchoate and derivative claims should not entitle them to maintain separate litigation in a forum that has been waived by the principal beneficiary [the plan]." *Id.*

Accordingly, the Court is satisfied that there is no issue of material fact concerning Helbling's authority to bind the plan, and thus plaintiffs, to the arbitration agreement.

#### C. *Plaintiffs' Claim that the Customer Agreement Was a Contract of Adhesion*

■ As a final objection to defendant's motion to stay the action and compel arbitration, plaintiffs claim, somewhat cryptically, that the customer agreement with Oppenheimer & Co. was a contract of adhesion. Because plaintiffs utterly failed to brief this

issue, and instead chose to raise it for the first time at oral argument, the Court is left to speculate that plaintiffs base their contention on the assertion that defendant did not highlight the arbitration clause for them when presenting the customer agreement, and that plaintiffs therefore lacked any meaningful opportunity to negotiate the terms of the customer agreement and the arbitration clause in particular.

This argument is spurious, and has been soundly rejected by numerous courts. *See, e.g., Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696 (10th Cir.1989) (rejecting also claim that contract was one of adhesion because was boilerplate contract plaintiffs had to sign to participate in securities market); *Surman v. Merrill Lynch, Pierce, Fenner & Smith,* 733 F.2d 59 (8th Cir.1984) (finding that language of arbitration clause, substantially similar to that employed in the customer agreement in instant case, did not give rise to contract of adhesion); *Schuster v. Kidder, Peabody & Co.,* 699 F.Supp. 271 (S.D.Fla.1988) (rejecting argument that customer agreements signed in relation to investment accounts constituted contracts of adhesion lacking mutuality of obligation); *Allis Chalmers Mfg. Co. v. Byers,* 184 Okla. 475, 88 P.2d 368 (1939) ("Plaintiffs' arguments that the arbitration clause was either not noticed or not explained to them is also unpersuasive. It is generally presumed that one who executes an instrument has read it and understands its contents."). Therefore, the Court is not persuaded that the customer agreement between the Micro Products Profit–Sharing Retirement Plan and Oppenheimer & Co. was a contract of adhesion.

### IV. *Conclusion*

Recent caselaw reflects an unequivocal trend favoring the enforcement of arbitration clauses even though the claims being litigated are statutory in nature. The recent decisions of *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) and, in particular, *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3d Cir.1993), instruct that courts should enforce an arbitration clause involving statutory claims where there is no issue regarding the making of the agreement to arbitrate.

For the reasons set forth above, the Court concludes that there does not exist in this case any issue of fact regarding the formation of the customer agreement, and the arbitration clause in particular, between Micro Products Profit–Sharing Retirement Plan and Oppenheimer & Co. Although plaintiffs themselves were not signatories to the customer agreement with defendant, the evidence supporting the status of Helbling as plan administrator of the profit-sharing plan is uncontroverted, and the Court must conclude that Helbling had the authority to bind the plan to the provisions of the customer agreement. Moreover, that Helbling may have violated the fiduciary obligations owed to the plan does not, by itself, give rise to a dispute concerning the making of the agreement to arbitrate. Finally, it is clear that the customer agreement can not be considered a contract of adhesion.

Accordingly, it is the conclusion of the undersigned that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., mandates that defendant's motion be granted, and that this action therefore be stayed and submitted to arbitration.

An Order embodying these determinations shall issue.