**Kevin COMER, Plaintiff,**

v.

**MICOR, INC., et al., Defendants.**

**No. C 03–0818 SBA.**

United States District Court,
N.D. California.

July 21, 2003.

Daniel Mark Feinberg, Todd Jackson, Lewis & Feinberg, P.C., Oakland, CA, for Kevin Comer.

R. Bradford Huss, Yana S. Johnson, Trucker Huss, APC, A Professional Corporation, San Francisco, CA, for Micor, Inc., Kenneth C. Smith, Elliot H. Wagner, Barbara Arbucci.

Benjamin W. White, Peter R. Boutin, Keesal, Young & Logan, San Francisco, CA, for Salomon Smith Barney, Inc.

## ORDER DENYING PETITION TO COMPEL ARBITRATION AND MOTION TO STAY PROCEEDINGS

ARMSTRONG, District Judge.

Plaintiff Kevin Comer ("Plaintiff"), a participant in the Micor, Inc. Employee Pension Plan and the Micor, Inc. Employee Profit Sharing Plan (collectively, the "Plans"), brings the instant action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Plaintiff asserts an ERISA claim under 29 U.S.C. § 1132(a)(2) for breach of fiduciary duty against defendant Micor, Inc. ("Micor"), the administrator of the Plans; against defendants Kenneth C. Smith, Elliot H. Wagner, and Barbara Arbucci (collectively, the "Trustees"), the trustees of the Plans; and against defendant Smith Barney, Inc.[1] ("SB"), with whom the Trustees had opened and maintained two accounts on behalf of the Plans. Plaintiff also asserts an ERISA claim for equitable relief from interference with protected rights against Micor.

---

1. Smith Barney, Inc. is sued herein under its former name, Salomon Smith Barney, Inc.

The parties are before the Court on Defendant Smith Barney, Inc.'s Petition to Compel Arbitration and Motion to Stay Proceedings (the "Petition"). Having read and considered the papers submitted and being fully informed, the Court DENIES the Petition.[2]

### BACKGROUND

Plaintiff was an employee of Micor from November 1994 to January 2003. During his employment, Plaintiff worked as a database administrator, systems programmer, system architect, and programmer. At all relevant times, Plaintiff was a participant, as defined in 29 U.S.C. § 1002(7), in the Plans.

In or about 1999, SB began providing investment advice for a fee to Micor and the Trustees regarding the Plans pursuant to certain Investment Management Agreements (the "Agreements") entered into between the Trustees (on behalf of the Plans) and SB. These Agreements contained arbitration provisions by which any disputes arising under the terms of the Agreements or the parties' relationship would be referred to arbitration. Micor and the Trustees allegedly did not conduct a request for proposals from potential investment advisors prior to retaining SB. Micor and the Trustees also allegedly did not adequately investigate the qualifications of the individuals at SB who would be providing investment advice to the Plans. Defendants allegedly did not prepare appropriate investment policies and objectives for the Plans.

In or about 1999, Defendants allegedly began investing most of the Plans' assets in large capitalization equities, with most of the Plans' holdings concentrated in high technology and telecommunications equi-

ties. Defendants maintained this investment strategy until in or about June 2002, by which time the Plans had incurred large investment losses. Plaintiff claims that he urged Micor and the Trustees to take corrective action to bring the Plans into compliance with ERISA's fiduciary requirements, and although they terminated SB as an investment advisor for the Plans in or about August 2002, they resisted Plaintiff's requests. Plaintiff maintains that the Trustees and Micor began retaliating against him by excluding him from conference calls and meetings regarding Micor's business operations, reducing his work assignments, and changing his compensation structure. Plaintiff claims that he was forced to leave his employment with Micor in January 2003 because of this retaliation.

Plaintiff commenced the instant action in this Court on February 25, 2003. On April 28, 2003, SB filed the instant Petition, asserting that Plaintiff's ERISA claim against SB is arbitrable pursuant to the arbitration provisions of the Agreements. SB asks the Court to issue an order compelling arbitration of all claims raised in Plaintiff's complaint and further seeks an order staying the proceedings in this action pending the arbitration. Plaintiff opposes the Petition, and the Trustees join in Plaintiff's opposition.

### DISCUSSION

#### A. Preliminary Analysis on Initial Briefing and Order for Supplemental Briefing

SB argues in its opening brief that Plaintiff is subject to the arbitration provision in each of the Agreements even

---

**2.** This matter is suitable for disposition without a hearing. Fed.R.Civ.P. 78; Civ. L.R. 7– 1(b).

though Plaintiff is not a signatory to the Agreements. In particular, SB argues that Plaintiff is bound by the Agreements because he is a participant in the Plans; according to SB, "[a]n ERISA plan participant is bound by an arbitration agreement entered into by Trustees of the Plan with an investment firm." The sole authority offered by SB for the proposition that an ERISA participant is bound by an arbitration agreement under these circumstances is a case from the District of New Jersey, *Bevere v. Oppenheimer & Co.*, 862 F.Supp. 1243, 1249 (D.N.J.1994).

Plaintiff responds in his opposition by making three arguments.[3] First, Plaintiff contends that the Supreme Court's recent decision in *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), holds categorically that non-parties to an arbitration agreement may not be compelled to arbitrate. Second, Plaintiff asserts that under *Waffle House*, Plaintiff's claims are not subject to arbitration under the reasoning of *Bevere* because Plaintiff, as a "participant" in the Plans, has standing to sue SB pursuant to 29 U.S.C. § 1132(a)(2) independent of any standing that the Trustees might have. Third, Plaintiff argues that because the Trustees were not his agents, their signing the agreements cannot bind him to their terms.

In its reply brief, SB argues, first, that *Waffle House* is inapposite because the sole issue addressed by the Supreme Court therein was whether the fact that a plaintiff in an employment discrimination case had signed a mandatory arbitration agreement with his employer limited the remedies available to the EEOC. Second, with respect to Plaintiff's second and third arguments, SB contends that Plaintiff is bound to the arbitration provisions in the Agreements, regardless of whether the Trustees were his agents, due to his status as a third-party beneficiary of the Agreements.

In its Order for Supplemental Briefing re: Petition to Compel Arbitration and Continuing Hearing on Petition and Case Management Conference (the "Order for Supplemental Briefing"), filed on June 12, 2003, the Court provided the parties with its preliminary analysis of these issues, including its assessment of the parties' arguments and of the authorities the Court had reviewed, and ordered further briefing. The Court explained that it agreed with SB that *Waffle House* was not dispositive. Notwithstanding *Waffle House's* ostensibly categorical pronouncement that "a contract cannot bind a non-party", *id.* at 294, 122 S.Ct. 754, the Court stated that it had great difficulty construing the relevant language to abrogate federal courts' well-established practice of finding non-signatories bound to arbitration agreements under traditional contract and agency principles, *e.g., Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995) (noting that court had recognized five theories based on common-law principles of contract and agency law to bind non-signatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel); *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187–88 (9th Cir.1986). The Court was able to locate only one federal

---

**3.** Plaintiff does not specifically identify the first two of these arguments as independent arguments; they are both made with respect to his treatment of *Equal Employment Opportunity Commission v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), in section III.A. of his opposition brief. The first argument, *see infra,* is in fact made somewhat implicitly, rather than expressly. Nevertheless, for the sake of thoroughness, the Court has identified these two arguments as independent and meriting separate discussion.

court case, cited by Plaintiff in his opposition brief, that had applied this categorical statement from *Waffle House* literally: *Miles v. Naval Aviation Museum Foundation, Inc.*, 289 F.3d 715, 720 (11th Cir. 2002). That case did not, however, apply the statement in the context of enforcement of an arbitration agreement. By contrast, since the Supreme Court handed down *Waffle House* in January 2002, federal courts have continued to recognize the principle that non-signatories may be bound to arbitration agreements through application of traditional contract and agency rules. *E.g., Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir.2003); *AHTNA Gov't Servs. v. 52 Rausch, LLC*, No. C 01–00130 SI, 2003 WL 403359, at *7 (N.D.Cal. Feb.19, 2003) (Illston, J.). The Court thus construed the relevant language as stating only the general rule of contract law that a nonparty to a contract is not bound to the contract, but leaving intact the exceptions in the arbitration context that are based on common-law contract and agency principles.

The Court also agreed with SB that the mere fact that the Trustees may not have been Plaintiff's agents is not dispositive of whether Plaintiff is bound by the arbitration provisions in the Agreements. As discussed in the preceding paragraph, federal courts have bound non-signatories to arbitration agreements based on a variety of theories stemming from common-law contract and agency; agency is but one such theory. *E.g., Thomson–CSF*, 64 F.3d at 776.

The Court was thus left with SB's reliance on *Bevere* (and Plaintiff's counterargument that *Bevere* is inapposite based on *Waffle House* ) and its third-party beneficiary argument. These theories were clearly distinct. Regarding the former, the Court explained that SB was correct

that *Bevere* held that the plaintiffs, who were plan participants and beneficiaries, were subject to an arbitration provision in a contract entered into between the plan (through the plan administrator, acting on behalf of the plan) and a fiduciary-defendant (Oppenheimer & Co.). 862 F.Supp. at 1245, 1249. In so holding, the *Bevere* court did not rely on any third-party beneficiary theory, but instead on "the law in this circuit", *id.* at 1249, specifically set out in a Third Circuit case entitled *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923 (3d Cir.1985).[4] The *Bevere* court invoked *Barrowclough* for the proposition that "individuals who are not direct signatories to an arbitration agreement may nevertheless be bound by it when their claims arise from the very contract that contains the arbitration clause." *Bevere*, 862 F.Supp. at 1249. The court focused on the role of the relationship between the plan and the fiduciary-defendant as giving rise to the claims that plaintiffs were asserting:

> In this case, if plaintiffs have any claims at all, those claims clearly arise from the relationship between the plan and [the fiduciary-defendant].... Thus, plaintiffs simply can not on the one hand sue defendant on a claim arising from this relationship, while simultaneously seeking to repudiate the obligations set forth in the document that was created to govern that very relationship. Here, as in *Barrowclough*, the fact that plaintiffs have chosen to pursue "inchoate and derivative claims should not entitle them to maintain separate litigation in a forum that has been waived by the principal beneficiary [the plan]."

*Id.* (quoting *Barrowclough*, 752 F.2d at 938–39) (second alteration in original).

Thus, although the *Bevere* court focused on the nature of the relationship between

---

4. *Barrowclough* was overruled on other grounds by *Pritzker v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993).

the parties to the contract and the fact that the plaintiffs' claims were derivative of that relationship, it did not expressly make any determination that the plaintiffs were third-party beneficiaries of the contract at issue. If anything, the court appeared to be relying on a species of equitable estoppel. *See, e.g., Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 417–18 (4th Cir. 2000).[5]

Given that *Bevere* did not expressly rely on any third-party beneficiary theory and that SB did not otherwise raise this theory implicitly or explicitly in its opening brief, Plaintiff did not address the third-party beneficiary theory in his opposition brief. The Court therefore did not have the benefit of any insight from Plaintiff on this score. The Court concluded that such insight would be helpful because, having reviewed pertinent authorities, it had concluded that the third-party beneficiary theory was potentially meritorious.[6] Given that federal courts routinely apply theories based on common-law contract and agency principles to bind a non-signatory to an arbitration agreement, it seemed at least plausible that a non-signatory could also be bound on a third-party beneficiary theory.

The Court, however, had significant concerns both with SB's reliance on *Bevere* and with its third-party beneficiary theory. First, *Bevere* relied on the notion that the

plaintiffs' claims arose out of the relationship between the parties to the contract and on the conclusion that these claims were derivative in the sense that the plaintiffs' claims in *Barrowclough* were derivative. *Bevere,* 862 F.Supp. at 1249. But the Court could locate no Ninth Circuit case that relied on this nebulous notion that a non-signatory can be bound to an arbitration provision in the underlying contract if the non-signatory's claims "arise" from the contracting parties' "relationship." The relevant cases that the Court uncovered applied only traditional principles of contract and agency law, such as veil-piercing and estoppel. The Court was hesitant to apply the ill-defined *Bevere* theory without being able to point to some support in Ninth Circuit authorities or even other authorities outside the Third Circuit. This hesitance was reinforced by the notion in *Waffle House* that a person or entity that has standing to sue independent of a contracting party, which would arguably include a plan "participant" under ERISA, is not bound by the contracting party's agreement to arbitrate.

The Court also expressed concerned about the propriety of applying the third-party beneficiary theory. The Court noted that under Ninth Circuit law, a third-party beneficiary has rights under a contract only if the parties to the contract had an intention to benefit that third party. *See Britton v. Co-op Banking Group,* 4 F.3d 742, 745 (9th Cir.1993).[7] That inten-

<hr/>

**5.** The Court stated that it disagreed with Plaintiff's contention that "the [*Bevere*] court held that the plan administrator had authority to bind plan participants under agency law principles." The Court explained that the *Bevere* court held only that the plan administrator had authority to bind *the plan* to the arbitration clause in the contract at issue. 862 F.Supp. at 1248. From that point the court concluded that the plaintiffs were bound by the arbitration clause, but it did not expressly (or, as far as the Court can tell, implicitly) hold that the plaintiffs, as partici-

pants and beneficiaries, were bound to the clause through agency law principles; instead, it relied on the "relationship" between the plan and the fiduciary-defendant and on the nature of the plaintiffs' claims. *See id.* at 1249.

**6.** The Court agreed with SB that ERISA claims are arbitrable, a point that Plaintiff did not dispute.

**7.** The Court observed that *Britton* involved a non-signatory's enforcement of an arbitration

tion must be proved with *evidence. See id.* SB, however, had pointed to no evidence in support of its contention, offering only the unsupported assertion in its reply brief that "[t]here is no dispute that Plaintiff . . . is a third-party beneficiary of the contract containing the arbitration agreement." The Court speculated that SB was subjectively relying on certain statutory language or certain evidence for this assertion, but the Court could not discern its basis from SB's briefs.

Having provided this preliminary analysis and survey of relevant authorities, the Court concluded that it would benefit from supplemental briefing. The Court ordered SB to file a supplemental brief "clarifying and setting forth its arguments with respect to (1) its reliance on *Bevere, supra,* and (2) its assertion that Plaintiff is subject to the arbitration provision in each of the Agreements as a third-party beneficiary of the Agreements." (Order for Supp. Briefing at 6.) The Court admonished SB to "support the assertions in its supplemental brief with citations to evidence and/or legal authorities to the fullest extent reasonably possible." (*Id.*) The Court also ordered Plaintiff to file a supplemental brief "responding to the arguments raised in SB's supplemental brief and addressing any other matters pertinent to (1) SB's reliance on *Bevere* and (2) SB's assertion that Plaintiff is subject to the arbitration provision in each of the Agreements as a third-party beneficiary of the Agreements." (*Id.* at 7.) The Court provided the

same admonishment to Plaintiff as it had provided to SB. (*Id.*)

## B. *Analysis Following Supplemental Briefing*

The parties have timely filed supplemental briefs. In its supplemental brief, SB allows that it has been unable to locate any cases in the Ninth Circuit or outside of the Third Circuit in which a court has compelled a non-signatory to arbitration based on the notion that the non-signatory's claims "arise from the contracting parties' relationship." SB contends, however, that the Court should follow *Bevere* for two reasons. First, SB points out that SB would not be a fiduciary of the Plans, and thus Plaintiff would not have standing to sue SB, absent the fact that the Trustees executed the Agreements with SB. SB does not explain the significance of this fact or how it supports application of the *Bevere* principle. In a footnote, SB claims that *Waffle House* is inapposite because Plaintiff would not have standing to sue SB in the absence of the Trustees' opening accounts with SB, but it does not explain how Plaintiff's situation is distinct from that of the EEOC in *Waffle House.*

Second, SB asserts that the court's decision in *Bevere* was based primarily on the determination that the plan administrator had the authority to bind the ERISA plan participants to the agreement containing the arbitration provision. SB maintains that the *Bevere* court did in fact rely on agency principles in reaching this conclusion.[8] SB argues that because the docu-

---

clause against a signatory and that the *Britton* scenario contrasted with the instant situation, where a signatory is seeking to enforce an arbitration clause against a non-signatory. Nevertheless, the Court explained that *Britton* suggested that, at a minimum, SB would have to establish as a condition precedent to asserting the arbitration provisions against Plaintiff that Plaintiff could indeed avail himself of the benefits of the Agreements.

8. This statement stands in arguable contradiction to its assertion in its reply brief that the *Bevere* court was not relying on agency principles when it concluded that the beneficiaries were bound by the arbitration agreement. Whether or not SB has contradicted itself, however, is irrelevant to the Court's analysis *infra.*

ments governing the Plans conferred on the Trustees authority to bind the Plans, under *Bevere* the Trustees bound Plaintiff to the Agreements when they signed them.

As for the third-party beneficiary argument, SB contends that there is ample evidence that Plaintiff is an intended third-party beneficiary of the Agreements. SB agrees with the Court's citation to *Britton, supra,* for the proposition that a third-party beneficiary of a contract has rights under the contract only if there is a showing that the contracting parties intended to benefit the third party. SB cites to the documents governing the Plans for the proposition that the Trustees had authority to bind the Plans to the Agreements. It then asserts, without citing to any legal or evidentiary support, that "[t]here can be no dispute that this authority is granted to the Trustees so that they can manage the Plan assets in a way that is most beneficial to the Plan participants." SB goes on to quote language in the Agreements stating that SB acknowledged that it is a fiduciary under ERISA. SB then invokes 29 U.S.C. § 1004(a)(1)(A)(i), which requires a fiduciary to discharge his or her duties solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants, in support of his contention that Plaintiff was an intended third-party beneficiary of the Agreements. Finally, SB submits that "the very fact that Plaintiff can bring this action against SB demonstrates that he can avail himself of the benefits of the agreement."

Plaintiff responds with several arguments. First, Plaintiff maintains that in *IT Corp. v. General American Life Insurance Co.,* the Ninth Circuit held that a contract between an employer and a plan fiduciary cannot be enforced against a plan participant who is not a party to the contract. 107 F.3d 1415, 1418 (9th Cir.1997). Plaintiff asserts that the Ninth Circuit's

holding in *IT Corp.* applies with equal force to this case, such that the arbitration provisions cannot be enforced against Plaintiff because he did not sign the Agreements containing the arbitration provisions. Second, Plaintiff contends that he is not an intended third-party beneficiary of the Agreements because they do not identify him as a third-party beneficiary and SB has not presented any evidence that the parties specifically intended him to benefit. Plaintiff further argues that SB errs in asserting that its fiduciary status is evidence that Plaintiff is an intended third-party beneficiary, because the Ninth Circuit has held that ERISA's protections, even when invoked by a plan beneficiary in a separate action, run only to the *plan,* not to the beneficiary.

Third, Plaintiff emphasizes that he is not seeking to vindicate any contract rights under the Agreements. That is, he is not alleging that SB has breached the terms of the Agreements; rather, he is alleging that SB breached its statutory fiduciary duties to the Plans. Plaintiff observes that SB's fiduciary liability does not depend on his proving that SB violated any of the terms of the Agreements. Fourth, Plaintiff asserts that even if he is a third-party beneficiary of the Agreements, Plaintiff is not a third-party *obligor* of the Agreements. Thus, according to Plaintiff, the arbitration provisions in the Agreements cannot be enforced against him. Finally, Plaintiff asserts that the *Bevere* court's holding is not supported by any principle of agency or contract law, and therefore the Court should decline to follow it.

■ The Court finds the parties' supplemental briefing tremendously helpful, and it has convinced the Court that SB's Petition must be denied for several reasons. First, although SB surely did not intend it, its efforts to distinguish *Waffle House* actually clarify that *Waffle House* is fully

applicable to the instant situation and requires the same outcome. SB maintains that *Waffle House* is inapposite because, but for the Trustees' signing the Agreements with SB, Plaintiff would have no basis on which to sue SB. In *Waffle House,* the issue confronting the Supreme Court was whether an employee's signing an employment agreement containing an arbitration provision precluded the EEOC from seeking victim-specific relief in an Americans with Disabilities Act ("ADA") enforcement action. 534 U.S. at 282, 122 S.Ct. 754. The Court held that the signing of the arbitration agreement did not bar the EEOC from seeking victim-specific relief because the EEOC has independent statutory authority to bring suit and that it never agreed to arbitrate its claim against the defendant. *Id.* at 294–95, 122 S.Ct. 754.

It is telling that SB never makes an attempt to explain how the situation in *Waffle House* is distinct from the instant situation on the ground that but for the Trustees' signing the Agreements with SB, Plaintiff would have no basis on which to sue SB. Perhaps SB does not do so because the *Waffle House* situation is clearly not distinct in this regard. It is obvious that the EEOC would not have an enforcement cause of action under the ADA if the employee had never signed the employment agreement, yet this fact did not preclude the Court from concluding that the EEOC was not bound by the arbitration agreement. Thus, the fact that Plaintiff arguably would not have a cause of action under ERISA for breach of fiduciary duty if the Trustees had not signed the Agreements with SB does not make *Waffle House* inapposite.[9]

But *Waffle House* is not only not distinguishable on the basis advanced by SB, it is materially identical to the instant situation with regard to the relevant principles. In *Waffle House,* the legal bases on which the EEOC was suing the employer (*i.e.,* the EEOC enforcement provision of the ADA and 42 U.S.C. § 1981a) were distinct from the legal basis on which the employee might have brought suit against the employer (*i.e.,* the ADA's private right of action provision). *See id.* at 291, 122 S.Ct. 754. Similarly, the right of action for breach of fiduciary duty that Plaintiff invokes in this case, which is established in 29 U.S.C. § 1132(a)(2), is distinct from that which the Trustees or the Plan may have either under ERISA or under the common law for breach of contract. Moreover, the EEOC in *Waffle House* was seeking victim-specific relief, not relief inuring to the benefit of the EEOC itself. *Id.* at 283–84, 122 S.Ct. 754. Similarly, by bringing suit under 29 U.S.C. § 1132(a)(2), Plaintiff is seeking relief available under 29 U.S.C. § 1109, which provides for the making good *to the Plans*—not to Plaintiff himself—of any losses incurred as a result of SB's alleged breach of fiduciary duty. 29 U.S.C. §§ 1109(a), 1132(a). Finally, the *Waffle House* Court rested its holding that the EEOC was not bound by the arbitration provision on the fact that the EEOC was not a party to the employment contract and that it did not agree to arbitrate its claims. 534 U.S. at 294, 122 S.Ct. 754. Similarly, Plaintiff was not a party to the Agreements and did not agree to arbitrate his claims against SB. In light of these material similarities between *Waffle House* and the instant situation, the Court con-

---

**9.** It is not even clear that Plaintiff would not have a cause of action if the Trustees had not signed the Agreements with SB. SB became an ERISA fiduciary the moment that it provided investment advice for a fee, 29 U.S.C. § 1002(21)(A), and in so doing it opened itself to potential liability for breach of fiduciary duty in a claim under 29 U.S.C. § 1132(a)(2). There is no requirement in ERISA that the provision of investment advice for a fee be governed by written instruments such as the Agreements.

cludes that *Waffle House* prevents Plaintiff's ERISA claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) from being subject to arbitration.

Second, the Court concludes that the *Bevere* principle for finding a non-signatory fiduciary or beneficiary to be bound by an arbitration agreement lacks sufficient support in the law outside the Third Circuit and relies on insufficiently persuasive reasoning to warrant its application here. At the outset, the Court reiterates that the *Bevere* court did *not* rely on agency principles (or, at least, did not rely on a complete agency relationship) to conclude that the plaintiffs were bound by the arbitration agreements signed by the plan administrator. Rather, the court relied on agency principles to conclude that the plan administrator bound the *plan* by virtue of an agency relationship, *see* 862 F.Supp. at 1248–49, and it then relied on the principle enunciated by the Third Circuit in *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 938–39 (3d Cir.1985), to conclude that the plaintiffs were bound by the arbitration agreement, *see Bevere*, 862 F.Supp. at 1249. To be sure, there is some language in *Bevere* that superficially suggests that the court concluded that the plan administrator had authority to bind the plaintiffs to the arbitration agreement by virtue of an agency relationship. For example, the court stated that it was required to determine whether the administrator's "execution of the customer agreement binds plaintiffs to the arbitration clause." *Id.* at 1247. The court also concluded at one point that the fact that the administrator "may have abused his discretion as plan administrator ... does not preclude a finding that he nevertheless had authority to bind the plan, and hence the plan participants, to the customer agreement ...." *Id.* at 1249. Read in context, however, it is evident that the *Bevere* court was not announcing that the administrator could bind plaintiffs through agency principles. Instead, the court was merely emphasizing that the administrator's authority to bind the plan was a *sine qua non* for the application of the arbitration provision to plaintiffs' claims and that if the plan were found to be so bound, the plaintiffs were also bound by this provision under the principles of *Barrowclough* insofar as they were *asserting claims based on the relationship between the plan and the defendant. See id.* at 1247–49 ("It is clear that if [the plan administrator] did not bind the plan to the agreement, then defendant's motion [to compel arbitration] must be denied .... [¶][I]f plaintiffs have any claims at all, those claims arise from the relationship between the plan and [the defendant]."). Had the *Bevere* court intended to rely exclusively on agency principles, it would have had no need to invoke *Barrowclough*.

■ Thus, as the Court noted in its preliminary analysis, the principle invoked in *Bevere* is distinct from any principle recognized in contract or agency law, although it arguably could be characterized as a form of estoppel. Given that, as SB has confirmed, this principle has not been recognized anywhere outside the Third Circuit, the Court is strongly hesitant to apply it here. Were the *Bevere* court or SB to provide persuasive reasoning for adopting this principle, the Court might decide otherwise. But the Court does not find persuasive the *Bevere* court's citation to *Barrowclough*, itself somewhat opaque in its reasoning, or its statement that "plaintiffs simply can not on the one hand sue defendant on a claim arising from this relationship, while simultaneously seeking to repudiate the obligations set forth in the document that was created to govern that very relationship." 862 F.Supp. at 1249. *Waffle House* suggests otherwise, as discussed above. Further, the mere fact that an outcome may appear unfair (which ap-

pears to be the underlying premise of the *Bevere* court's statement above) is not automatically sufficient to warrant imposition of a contractual obligation on a non-signatory. Finally, *IT Corp. v. General American Life Insurance Co.*, 107 F.3d 1415 (9th Cir.1997), suggests that the Ninth Circuit's preference is not to hold a non-signatory like Plaintiff to be bound to an arbitration agreement: in holding that the plaintiffs' ERISA claim was not subject to the arbitration agreement signed by their employer, the *IT Corp.* court focused on *the plaintiffs' failure to sign the agreement at issue. See id.* at 1418–19.[10] SB has not advanced any arguments for adopting the *Bevere* principle not already addressed above; most of its arguments are mere reiterations of the *Bevere* principle, rather than arguments supporting the validity of the *Bevere* court's reasoning. Accordingly, the Court declines to apply the principle embodied in *Bevere*.

■ Third, there is insufficient evidence or legal authority for the Court to conclude that Plaintiff is a third-party beneficiary of the Agreements. Despite SB's bald assertion that there is "ample evidence in this case that SB and the Trustees ... intended to benefit Mr. Comer," there is *no evidence whatever* to this effect. The portion of the documents governing the Plans to which SB cites indicates only that the Trustees were authorized to engage the services of an investment manager like SB that would have the power to manage the assets of the Plans. This statement is a far cry from evidence that the Agreements were intended to benefit participants in the Plans. In addition, SB's invocation of language in the Agreements in which SB acknowledges that it is an ERISA fiducia-

ry is irrelevant. Not only does this language fail to demonstrate that the Agreements intended to benefit participants like Plaintiff, but SB would be an fiduciary regardless of its characterization in the Agreements, *see IT Corp.*, 107 F.3d at 1419, because it provided investment advice for a fee, 29 U.S.C. § 1002(21)(A). Further, merely because SB as a fiduciary had a statutory obligation under 29 U.S.C. § 1004(a)(1)(A)(i) to discharge its duties in the interest and for the benefit of participants does not mean that both the Trustees and SB abided by their obligations and intended the Agreements to benefit the participants of the Plans. Finally, SB is incorrect in asserting that "the very fact that Plaintiff can bring this action against SB demonstrates that he can avail himself of the benefits of the agreement." Plaintiff is able to bring this action against SB by virtue of his status as a participant under ERISA and the fact that SB provided investment advice to the Plans for a fee, thereby making it a fiduciary under ERISA; the terms of the Agreements are irrelevant.

■ Fourth, even if Plaintiff is properly considered an intended third-party beneficiary of the Agreements, this status does not result in application of the arbitration provisions of the Agreements against Plaintiff. Plaintiff himself is not suing for breach of contract; that is, he is not suing to enforce the terms of the Agreements, but instead to enforce the Plans' rights vis-à-vis their fiduciaries under ERISA. *SB*, however, is indeed seeking to enforce the arbitration provisions of the Agreements against Plaintiff. Thus, the relevant issue

---

**10.** Admittedly, *IT Corp.* is not on all fours with the instant case because it involved exoneration provisions, not arbitration provisions, and the contract at issue was signed by the employer, not the plan trustees or administra-

tor. *Id.* at 1418–19. But the court did not rely on those facts in concluding that the plaintiffs were not bound by the contract. *See id.*

is not whether Plaintiff can avail himself of the benefits of the Agreements in his capacity as third-party beneficiary, but whether the Agreements can be *enforced against* Plaintiff. In his supplemental brief, Plaintiff has amply demonstrated that a third-party *beneficiary* is not a third-party *obligor. See Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir. 1985) (holding agreement could not be enforced against alleged third-party beneficiary of agreement); *Motorsport Eng'g, Inc. v. Maserati SPA,* 316 F.3d 26, 29 (1st Cir.2002). Accordingly, the Agreements cannot be enforced against Plaintiff as a third-party beneficiary, at least in the absence of his suing to enforce the terms of the Agreements.

For these reasons, the Court concludes that Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) against SB is not subject to the arbitration provisions in the Agreements.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT Defendant Smith Barney, Inc.'s Petition to Compel Arbitration and Motion to Stay Proceedings [Docket No. 9] is DENIED.

IT IS SO ORDERED.