FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN COMER,

*Plaintiff-Appellee,*

v.

MICOR, INC.; KENNETH C. SMITH; ELLIOT H. WAGNER; BARBARA ARBUCCI,

*Defendants,*

and

SALOMON SMITH BARNEY, INC.,

*Defendant-Appellant.*

No. 03-16560

D.C. No.
CV-03-00818-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
October 18, 2005—San Francisco, California

Filed February 1, 2006

Before: Alex Kozinski and Ferdinand F. Fernandez,
Circuit Judges, and Terry J. Hatter, Jr.,* District Judge.

Opinion by Judge Kozinski

---

*The Honorable Terry J. Hatter, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

## COUNSEL

Peter R. Boutin and Benjamin W. White, Keesal, Young & Logan, P.C., San Francisco, California, for the defendant-appellant.

Daniel Feinberg and Thuy T. Le, Lewis & Feinberg, P.C., Oakland, California, for the plaintiff-appellee.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether an ERISA-plan participant can be compelled to arbitrate an ERISA claim brought on behalf of the plan where the plan—but not the participant—has signed an arbitration agreement.

### Facts

Kevin Comer was a participant in two ERISA plans operated by Micor, Inc. The plan trustees retained Salomon Smith Barney, Inc. (Smith Barney) to provide investment advice. The relationship between Smith Barney and the trustees is governed by investment management agreements. The agreements contain arbitration clauses, pursuant to which "all claims or controversies" between the trustees and Smith Barney "concerning or arising from" any of the trustees' accounts managed by Smith Barney must be submitted to binding arbitration.

From 1999 through 2002, Smith Barney allegedly concentrated the plans' assets in high-tech and telecom stocks. Even after the bubble burst in early 2000, Smith Barney allegedly maintained its concentrated positions. The plans suffered heavy investment losses.

Comer sued Smith Barney under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), for breach of fiduciary duty. *See id.* §§ 1104(a)(1)(A)(i), 1109(a), 1132(a)(2).[1] As the district court explained, "by bringing suit under 29 U.S.C. § 1132(a)(2), Plaintiff is seeking relief available under 29 U.S.C. § 1109 [for breach of fiduciary duty], which provides for the making good *to the Plans*—not to Plaintiff himself—of any losses incurred as a result of [Smith Barney's] alleged breach of fiduciary duty." *Comer* v. *Micor, Inc.*, 278 F. Supp. 2d 1030, 1038 (N.D. Cal. 2003); *see also Parker* v. *BankAmerica Corp.*, 50 F.3d 757, 768 (9th Cir. 1995) ("Although individual beneficiaries may bring a breach of fiduciary duty claim against an ERISA plan administrator, they must do so for the benefit of the plan. 'Any recovery for a violation of [§ 1132(a)(2)] must be on behalf of the plan as a whole, rather than inuring to individual beneficiaries.' " (alteration in original) (quoting *Horan* v. *Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1418 (9th Cir. 1991))).[2]

Smith Barney unsuccessfully petitioned the district court to stay the proceedings against Smith Barney and compel arbitration, and it now appeals.[3]

## Discussion

We have, in the past, expressed skepticism about the arbitrability of ERISA claims, *see Amaro* v. *Cont'l Can Co.*,

---

[1] Smith Barney is a fiduciary under ERISA because it provided investment advice to the plans for a fee. *See* 29 U.S.C. § 1002(21)(A)(ii).

[2] Smith Barney does not challenge Comer's Article III standing, probably because Comer, as a plan participant, has alleged sufficient "injury in fact" on account of Smith Barney's investment advice and because Comer would share in any recovery by the plans. *See Friends of the Earth, Inc.* v. *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

[3] Comer's complaint also names Micor and the trustees as defendants. The trustees joined in Comer's opposition to Smith Barney's petition to compel arbitration. *Comer*, 278 F. Supp. 2d at 1032. Neither Micor nor the trustees are parties to this appeal.

724 F.2d 747, 750 (9th Cir. 1984), but those doubts seem to have been put to rest by the Supreme Court's opinions in *Shearson/American Express Inc.* v. *McMahon*, 482 U.S. 220, 226 (1987) ("[The] duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights."), and *Rodriguez de Quijas* v. *Shearson/American Express, Inc.*, 490 U.S. 477, 481 (1989) (enforcing agreement to arbitrate claims arising under the Securities Act of 1933 and stating that prior decisions holding such clauses unenforceable had "fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes"). In fact, on the force of *McMahon*, we have held other statutory claims arbitrable. *See, e.g.*, *Simula, Inc.* v. *Autoliv, Inc.*, 175 F.3d 716, 724 (9th Cir. 1999) (antitrust and Lanham Act claims). Curiously, however, we have echoed the doubts expressed in *Amaro* without taking account of the intervening Supreme Court cases. *See Graphic Commc'ns Union, Dist. Council No. 2* v. *GCIU-Employer Ret. Benefit Plan*, 917 F.2d 1184, 1187 (9th Cir. 1990); *Johnson* v. *St. Frances Xavier Cabrini Hosp.*, 910 F.2d 594, 596 (9th Cir. 1990).

We need not resolve this tension in our caselaw because the parties seem to agree that ERISA claims are arbitrable. Nor need we consider whether the scope of this particular arbitration clause, which does not mention statutory claims or ERISA, is sufficiently broad to cover Comer's claim. We assume, as do the parties, that were this claim brought by the trustees, rather than by Comer, it would have to be submitted to arbitration.[4]

[1] We turn, then, to the single issue that was briefed and argued by the parties: whether the arbitration agreements apply to Comer's ERISA claim against Smith Barney. In *Letizia* v. *Prudential Bache Securities, Inc.*, 802 F.2d 1185

---

[4]We do not express any opinion as to litigation that might ensue between the trustees and Smith Barney.

(9th Cir. 1986), we explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* at 1187-88.[5] Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A.* v. *Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries. *See E.I. DuPont de Nemours & Co.* v. *Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 195 (3d Cir. 2001).

Smith Barney argues that Comer is bound by the arbitration clauses as a matter of equitable estoppel and as a third party beneficiary. Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Wash. Mut. Fin. Group, LLC* v. *Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). In the arbitration context, this principle has generated two lines of cases.

**[2]** Under the first of these lines, *nonsignatories* have been held to arbitration clauses where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *DuPont*, 269 F.3d at 199 (citing *Thomson-CSF*, 64 F.3d at 778). Under the second line of cases, *signatories* have been required to arbitrate claims brought by nonsignatories "at the nonsignatory's insistence because of the close relationship between the enti-

---

[5]Our holding in *IT Corp.* v. *General American Life Insurance Co.*, 107 F.3d 1415 (9th Cir. 1997), is not to the contrary. There, we held that "a fiduciary's contract with an employer cannot get it off the hook with the employees who participate in the ERISA plan. They did not sign a contract *exonerating* the fiduciary." *Id.* at 1418 (emphasis added). Unlike an exoneration clause—which has the drastic effect of extinguishing a claim entirely—an arbitration clause merely determines where, not whether, a claim will be heard. We do not read *IT Corp.* as casting doubt on *Letizia*'s core holding that a nonsignatory can be bound by an arbitration agreement under ordinary contract and agency principles.

ties involved." *Id.* (quoting *Thomson-CSF*, 64 F.3d at 779 (quoting *Sunkist Soft Drinks, Inc.* v. *Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993))) (internal quotation marks omitted).

[3] Because Smith Barney is invoking equitable estoppel against a nonsignatory, it is the first line of cases that is relevant. The insurmountable hurdle for Smith Barney, however, is that there is no evidence that Comer "knowingly exploit[ed] the agreement[s] containing the arbitration clause[s] despite having never signed the agreement[s]." *Id.* at 199. Prior to his suit, Comer was simply a participant in trusts managed by others for his benefit. He did not seek to enforce the terms of the management agreements, nor otherwise to take advantage of them. Nor did he do so by bringing this lawsuit, which he bases entirely on ERISA, and not on the investment management agreements. Smith Barney's attempt to shoehorn Comer's status as a passive participant in the plans into his "knowing[ ] exploit[ation]" of the investment management agreements fails.

[4] Smith Barney argues an alternate theory—that Comer is bound by the arbitration clauses as a third party beneficiary. "To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n* v. *Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000). Smith Barney has not produced any evidence that the signatories to the investment management agreements intended to give every beneficiary of the plans, such as Comer, the right to sue under the agreements.[6] It follows that Comer cannot be bound to the terms of a contract he didn't sign and is not even entitled to enforce. A third party beneficiary might in certain circum-

---

[6]We note, once again, that Comer's lawsuit is not based on contract law, but on a statutory provision that allows him to bring suit under ERISA on behalf of the plans.

stances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to. *See Motorsport Eng'g, Inc.* v. *Maserati SPA*, 316 F.3d 26, 29 (1st Cir. 2002); *Abraham Zion Corp.* v. *Lebow*, 761 F.2d 93, 103 (2d Cir. 1985).[7]

[5] Finally, we consider the Third Circuit's position that "whether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim *arises out of* the underlying contract to which it was an intended third party beneficiary." *DuPont*, 269 F.3d at 195 (emphasis added).[8] One problem with the Third Circuit's approach is that it is not grounded in "ordinary contract and agency principles." *Letizia*, 802 F.2d at 1187. As discussed above, neither principles of equitable estoppel nor third party beneficiary apply here. Nor can the Micor trustees be said to have acted as Comer's agents in entering into the investment management agreements. *See* Restatement (Second) of Trusts § 8 ("An agency is not a trust."). Similarly, there is no evidence that Comer's "subsequent conduct indicates that [he] is assuming the obligation to arbitrate." *Thomson-CSF*, 64 F.3d at 777. Nor has Comer "entered into a separate contractual relationship with [Smith Barney] which incorporates the existing arbitration clause." *Id.* And theories of veil-piercing

---

[7]Trust law provides a similar answer. Under trust law, the beneficiary of a trust "is not personally liable upon contracts made by the trustee in the course of the administration of the trust." Restatement (Second) of Trusts § 275 (1959). In contrast to agents—who *can* subject their principals to personal liability—"a trustee *cannot* subject the beneficiary to such liabilities." *Id.* § 8 cmt. c (emphasis added).

[8]This principle, or something like it, was applied by a New Jersey district court in *Bevere* v. *Oppenheimer & Co.*, 862 F. Supp. 1243 (D.N.J. 1994), a case that involved facts quite similar to our own. There, the district court held that "individuals who are not direct signatories to an arbitration agreement may nevertheless be bound by it when their claims *arise from* the very contract that contains the arbitration clause." *Id.* at 1249 (emphasis added). For the reasons discussed below, we do not consider *Bevere*'s holding persuasive.

and alter ego are inapplicable, given the absence of either fraud or a failure to observe corporate formalities. Because the Third Circuit's "arises out of" test is not grounded in any principle of contract or agency law of which we are aware, we are precluded by *Letizia* from adopting it.

**[6]** Even if the Third Circuit's test were grounded in ordinary principles of contract or agency law, it appears to have been superseded by *EEOC* v. *Waffle House, Inc.*, 534 U.S. 279 (2002). In *Waffle House*, the Supreme Court held that "an agreement between an employer and an employee to arbitrate employment-related disputes [did not bar] the Equal Employment Opportunity Commission . . . from pursuing victim-specific judicial relief." *Id.* at 282, 294. The EEOC's suit in *Waffle House*, on behalf of a Waffle House employee, "arose from" an employment agreement containing an arbitration clause. Nevertheless, the EEOC was not required to arbitrate its claim. *Id.* at 294.

**[7]** Smith Barney tries in vain to distinguish *Waffle House* by arguing that, whereas Comer is suing in an entirely derivative capacity, the EEOC was suing in a non-derivative capacity. We agree that the EEOC in *Waffle House* was not suing in a wholly derivative capacity. *See, e.g.*, *id.* at 297 ("[I]t simply does not follow from the cases holding that the employee's conduct may affect the EEOC's recovery that the EEOC's claim is merely derivative. We have recognized several situations in which the EEOC does not stand in the employee's shoes."); *id.* at 298 ("The fact that ordinary principles of res judicata, mootness, or mitigation may apply to EEOC claims does not . . . render the EEOC a proxy for the employee."). But that doesn't help Smith Barney because our own precedents hold that an ERISA claimant *also* sues in a non-derivative capacity. *See Landwehr* v. *DuPree*, 72 F.3d 726, 732-33 (9th Cir. 1995).

In *Landwehr*, we considered whether the statute of limitations for an ERISA claim ran from when the individual plain-

tiff, rather than the plan, became aware of the claim. Citing the "unfairness" that would result from a rule that extinguished a plaintiff's claim where the plan became aware of the claim—and did nothing—long before the individual plaintiff had notice of it, we held that the statute of limitations ran from the time when the individual plaintiff had actual knowledge of the claim. *Id.* at 732. In so holding, we expressly declined to treat the "real plaintiff" as the plan. *See id.* Even though money recovered on the ERISA claim would go to the plan, we held that the cause of action belonged to the individual plaintiff.[9] Comer's cause of action is materially indistinguishable from the EEOC's suit in *Waffle House*, which appears to have overruled the Third Circuit's approach.

\* \* \*

[8] Because Smith Barney's petition comes within the general rule that a nonsignatory is not bound by an arbitration clause,[10] Comer is not required to arbitrate his ERISA claim

---

[9]The Court in *Waffle House* relied on a similar precedent in determining that the EEOC was not suing in a wholly derivative capacity. *See Waffle House*, 534 U.S. at 287 ("[W]e recognized the difference between the EEOC's enforcement role and an individual employee's private cause of action in *Occidental Life Ins. Co. of Cal.* v. *EEOC*, 432 U.S. 355 (1977) . . . . *Occidental* presented the question whether EEOC enforcement actions are subject to the same statutes of limitations that govern individuals' claims.").

[10]We note in passing that *Waffle House* made a number of categorical statements that cannot be taken at face value. For example, the Court's statement that "[i]t goes without saying that a contract cannot bind a nonparty," *Waffle House*, 534 U.S. at 294, and its statement that "[t]he [Federal Arbitration Act] directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so,' " *id.* at 293 (quoting *Volt Info. Scis., Inc.* v. *Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)), would, if taken literally, jettison hundreds of years of common law under which nonparties can be contractually liable under ordinary contract and agency principles. *See* pp. 1238-39 *supra*. We thus join many of our sister circuits who, in the wake of *Waffle House*, have recog-

against Smith Barney.[11]

**AFFIRMED.**

---

nized that contract and agency principles continue to bind nonsignatories to arbitration agreements. *See, e.g.*, *CD Partners, LLC* v. *Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005); *Zurich Am. Ins. Co.* v. *Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005); *Wash. Mut. Fin. Group, LLC*, 364 F.3d at 267; *Intergen N.V.* v. *Grina*, 344 F.3d 134, 145 (1st Cir. 2003); *Merrill Lynch Inv. Managers* v. *Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam); *Javitch* v. *First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). *But cf. Miles* v. *Naval Aviation Museum Found., Inc.*, 289 F.3d 715, 720 (11th Cir. 2002) (holding that, under *Waffle House*, nonsignatory could not be bound by contractual exculpation clause).

[11]Although we agree with Smith Barney that the Federal Arbitration Act reflects "a liberal federal policy favoring arbitration agreements," that policy is best understood as concerning "the scope of arbitrable issues." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The question here is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite. *See Fleetwood Enters., Inc.* v. *Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) ("[The] federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead '[o]rdinary contract principles determine who is bound.' " (second alteration in original) (quoting *Daisy Mfg. Co.* v. *NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994))).