**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASVIRO MUNDI, as successor in
interest to Harnam Singh Mundi,
         *Plaintiff-Appellee,*

    v.

UNION SECURITY LIFE INSURANCE
CO.,

         *Defendant-Appellant.*

No. 07-16171

D.C. No.
CV 06-1493 OWW

OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted
December 9, 2008—San Francisco, California

Filed February 11, 2009

Before: A. Wallace Tashima, William A. Fletcher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Shane Reich, Fresno, California, for the plaintiff-appellee.

Kevin A. Rogers, Wells Marble & Hurst, Ridgeland, Mississippi, for the defendant-appellant.

**OPINION**

TASHIMA, Circuit Judge:

Union Security Life Insurance Company ("USLIC") appeals a decision of the district court denying its motion to compel arbitration in its dispute with Jasviro Mundi, the widow of Decedent Harnam S. Mundi. USLIC issued a life insurance policy to cover a loan taken out by Decedent. The life insurance policy did not contain an arbitration agreement; however, the loan agreement, to which USLIC was not a party, did contain an arbitration provision. The question, therefore, is whether USLIC may enforce the arbitration agreement, even though it is a nonsignatory to the agreement. We have jurisdiction pursuant to 9 U.S.C. § 16, and we affirm the district court's denial of USLIC's motion to compel arbitration.

**I.**

In May 2004, Decedent and Gurdip S. Gill obtained a home equity line of credit from Wells Fargo Bank, memorialized in a document called the EquityLine Agreement. Section 25 of the EquityLine Agreement required that "any dispute between

me and the Bank, regardless of when it arises or arose, will be settled using the following procedures." The arbitration provision provided as follows:

> A dispute is any unresolved disagreement between the Bank and me that relates in any way to accounts, loans, services or agreements subject to this Arbitration provision. It includes any claims or controversy of any kind, which arise out of or are in any way related to these accounts, loans, services or agreements. It includes claims based on broken promises or contracts, tort (injury caused by negligent or intentional conduct), breach of fiduciary duty or other wrongful actions. It also includes statutory, common law and equitable claim [sic]. A dispute also includes any disagreement about the meaning of this Arbitration Section and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Section. No dispute may be joined in an arbitration with a dispute of any other person or arbitrated on a class action basis. Furthermore, I agree that any arbitration I have with the Bank shall not be considered with any other arbitration and shall not be arbitrated on behalf of others without the consent of both me and the Bank.

In conjunction with the line of credit, Decedent purchased credit insurance in the amount of $50,000 to cover the amount of the loan. The charges for the insurance were added to the amount of the loan each month. Wells Fargo was the creditor beneficiary of the insurance — the insurance certificate provided that claim payments would be made to the creditor beneficiary "to pay off or reduce your debt." The certificate contained two questions in a medical application section, and it stated that the life insurance would not be paid if death resulted from a pre-existing condition. The certificate further provided that the insurance would stop on the date the loan stopped, or on the date that the borrower was in default.

Following Decedent's death, Mundi filed a claim with USLIC, asking the insurer to pay the $50,000 amount that was outstanding on the line of credit. USLIC denied the claim, stating that Decedent had answered "no" to the medical questions on the insurance application, even though he did have treatment for at least one of the pre-existing conditions listed on the application. USLIC explained that it would not have issued coverage if it had been aware of Decedent's complete medical history and therefore denied coverage. Decedent's death was not the result of any of these preexisting conditions.

Mundi filed a complaint in state court, alleging that she had been damaged by USLIC's refusal to pay the $50,000 to Wells Fargo and that USLIC acted in bad faith by unreasonably denying the claim. She sought to recover the costs that she had incurred and sought punitive damages.

USLIC removed the action to federal court and filed a motion to compel arbitration. The district court reasoned that, even though the insurance was purchased in order to repay the loan, Mundi's claims did not in any other way involve the terms of the EquityLine Agreement. The court further reasoned that the arbitration provision excluded the arbitration of claims of third parties and that USLIC was not an agent of Wells Fargo. The court accordingly denied the motion to compel arbitration. USLIC timely appealed.

## II.

The question we must answer is whether USLIC, a non-signatory to the arbitration agreement contained in the EquityLine Agreement, can require Mundi to arbitrate her claims against USLIC.[1] There is no question that the insurance certificate did not contain an arbitration provision. USLIC argues, however, that Mundi's claims are subject to the arbitration

---

[1]The denial of a motion to compel arbitration is reviewed de novo. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

agreement because they arise from and relate to the Equity-Line Agreement, and that equitable estoppel should be applied to compel arbitration.

**[1]** In determining whether parties have agreed to arbitrate a dispute, we apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). The presumption in favor of arbitration, however, does not apply "if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." *In re Tobacco Cases I, JCCP 4041*, 21 Cal. Rptr. 3d 875, 887 (Ct. App. 2004); *see also AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986) (" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960))); *Victoria v. Superior Court*, 710 P.2d 833, 834 (Cal. 1985) (en banc) (stating that " 'the policy favoring arbitration cannot displace the necessity for a voluntary *agreement* to arbitrate' " (quoting *Wheeler v. St. Joseph Hosp.*, 133 Cal. Rptr. 775, 783 (Ct. App. 1976))); *Crowley Mar. Corp. v. Boston Old Colony Ins. Co.*, 70 Cal. Rptr. 3d 605, 611 (Ct. App. 2008) ("The public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate."). "In addition, '[h]owever broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties *intended* to contract.' " *Victoria*, 710 P.2d at 834 (quoting Cal. Civ. Code § 1648) (alterations in original).

**[2]** The arbitration provision here defines a dispute as a disagreement between Wells Fargo and the borrower that "re-

lates in any way to accounts, loans, services or agreements subject to this Arbitration provision." Mundi's dispute with USLIC is not a disagreement between Wells Fargo and Decedent. Although there may be an attenuated relation between the EquityLine Agreement and the dispute between USLIC and Mundi, given that the insurance was taken out by Mundi's husband to pay off amounts owed under the Equity-Line Agreement in the event of his death, this relation is irrelevant. The arbitration agreement is premised on a disagreement between Wells Fargo and the borrower. In the absence of such a disagreement, the arbitration provision does not apply. Thus, any disagreement between the borrower and a third party, such as USLIC, is simply not within the scope of the arbitration agreement, even if it is related in some attenuated way to "accounts, loans, services or agreements" subject to the arbitration provision. Moreover, there is no indication in the arbitration provision that the parties intended to arbitrate or agreed to arbitrate a claim based on the insurance certificate. The face of the contract accordingly indicates that this dispute "is not within the scope of the arbitration provision." *In re Tobacco Cases*, 21 Cal. Rptr. 3d at 887.

We turn therefore to USLIC's argument that arbitration should be compelled on the basis of equitable estoppel. General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against non-signatories. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "Among these principles are '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.' " *Id.* (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).[2]

---

[2]A nonsignatory also can seek to enforce an arbitration agreement as a third party beneficiary. *Comer*, 436 F.3d at 1101. USLIC, however, does not rely on third party beneficiary principles. Nor can it, because there is no evidence in the EquityLine Agreement that the signatories to the agreement intended to benefit third parties. *Id.* at 1102.

**[3]** "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.' " *Id.* (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). We have examined two types of equitable estoppel in the arbitration context. In the first, a nonsignatory may be held to an arbitration clause "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.' " *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)). Under the second, a signatory may be required to arbitrate a claim brought by a nonsignatory "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *DuPont*, 269 F.3d at 201.

**[4]** Neither line of cases addresses the precise situation we face. Although *DuPont* addressed the issue of a nonsignatory seeking to enforce an arbitration agreement against a signatory, in that case, it was a nonsignatory who brought claims against the signatory, rather than the signatory bringing claims against a nonsignatory. *Comer* itself addressed whether a signatory to an arbitration agreement could enforce the agreement against a nonsignatory. And, in light of the general principle that only those who have agreed to arbitrate are obliged to do so, we see no basis for extending the concept of equitable estoppel of third parties in an arbitration context beyond the very narrow confines delineated in these two lines of cases.

The Second Circuit addressed a situation similar to ours in *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008), where the defendants, who were nonsignatories to an arbitration agreement, sought to compel a signatory to arbitrate its claims against the defendants on estoppel grounds.

The court examined cases in which a nonsignatory was allowed to compel a signatory to arbitrate based on estoppel and reasoned that it was "essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration." *Id.* at 361. In addition to the requirement that the factual issues be intertwined, the court required "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.* at 359. Finding neither requirement met, the court affirmed the denial of the motion to stay pending arbitration. *Id.* at 359-62.

The Fourth Circuit also has addressed the situation of a nonsignatory seeking to compel a signatory to arbitrate its claims against the nonsignatory. In *American Bankers Insurance Group, Inc. v. Long*, 453 F.3d 623 (4th Cir. 2006), the Longs, signatories to a contract that contained an arbitration clause and that incorporated by reference a promissory note purchased by the Longs, sued American Bankers Insurance Group ("ABIG"), a nonsignatory to the agreement containing the arbitration clause. The Fourth Circuit reversed the district court's denial of ABIG's motion to compel arbitration, reasoning that all of the Longs' claims depended on the terms of the note. *Id.* at 630. Because the note was appended to and incorporated by reference into the contract that contained the arbitration agreement, the court held that "it would be inequitable to allow the Longs to seek recovery on their individual claims and at the same time deny that ABIG was a party to the [contract]'s arbitration clause." *Id.* at 630.

By contrast, in *Brantley v. Republic Mortgage Insurance Co.*, 424 F.3d 392 (4th Cir. 2005), the Fourth Circuit affirmed the denial of the defendant nonsignatory's motion to compel the plaintiffs to arbitrate their claims against the defendant. The plaintiffs entered into an arbitration agreement with their mortgage lender, but their mortgage insurance contract, which

was a separate transaction from the mortgage, did not contain an arbitration agreement. The Fourth Circuit held that equitable estoppel did not apply to compel the plaintiffs to arbitrate their Fair Credit Reporting Act claim against the mortgage insurance company because the claim did not arise out of or relate to the contract that contained the arbitration agreement. *Id.* at 396. Rather, the plaintiffs' claim was "wholly separate from any action or remedy for breach of the underlying mortgage contract that is governed by the arbitration agreement." *Id.* The court further reasoned that there were no allegations of collusion or misconduct by the mortgage lender to require equitable estoppel, and that the defendant was not a third party beneficiary of the arbitration agreement because the contract did not mention the defendant or the mortgage insurance transaction. *Id.* at 396-97.

[5] Mundi's claim that USLIC breached the insurance policy is not "intertwined with the contract providing for arbitration" — the EquityLine Agreement. *Sokol*, 542 F.3d at 361; *see also Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1079-81 (C.D. Cal. 2007) (denying the insurer's motion to compel arbitration under equitable estoppel, reasoning that the plaintiff's claims regarding his insurance policies were not intertwined with the credit card agreements that the policies covered). Nor does her claim " 'arise[ ] out of' " or " 'relate[ ] directly to' " the EquityLine Agreement. *Brantley*, 424 F.3d at 396 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (alterations in original). The resolution of her claim does not require the examination of any provisions of the EquityLine Agreement. The EquityLine Agreement does not mention the insurance certificate, let alone incorporate it by reference, as in *American Bankers*. As in *Brantley*, Mundi's claim is based solely on USLIC's actions, and there are no allegations of collusion or of misconduct by Wells Fargo, the signatory to the arbitration agreement. Given these circumstances, USLIC may not compel Mundi to arbitrate her claims against it. The order of the district court denying USLIC's motion to compel arbitration is

**AFFIRMED.**[3]

---

[3]Because we affirm the district court's denial of USLIC's motion to compel arbitration, we need not address USLIC's challenge to the district court's finding that USLIC waived its right to seek arbitration.